_____

No. 95-2502
_____

United States of America,       *
                                *
        Plaintiff-Appellee,      *
                                *  Appeal from the United States
    v.                          *  District Court for the
                                *  District of Minnesota.
Wesley Schindler,               *
                                *       [PUBLISHED]
        Defendant-Appellant.     *

_____

Submitted:  February 13, 1996

Filed:  February 23, 1996
_____

Before McMILLIAN, LAY and HANSEN, Circuit Judges.

_____


PER CURIAM.


     Wesley Schindler appeals his conviction for one count of
aiding and abetting possession with intent to distribute
methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C.
§ 841(a)(1), and one count of conspiring to distribute and to
possess with intent to distribute methamphetamine in violation of
21 U.S.C. § 846.  The district court, the Honorable David S. Doty,
presiding, sentenced Schindler to concurrent 114-month terms of
imprisonment.  Schindler challenges the sufficiency of the evidence
for the conviction on each count.


     We must affirm a conviction if, "viewing the evidence in the
light most favorable to the government, there is substantial
evidence to support the jury's verdict."  United States v. Meyer,
906 F.2d 1247, 1252 (8th Cir. 1990) (per curiam).  In this case, we
find there is substantial evidence to support Schindler's

conviction and thus affirm.

The primary evidence against Schindler arose from a controlled purchase of methamphetamine from Schindler by Barbara Ferry on July 1, 1994. Ferry was a government informant and an admitted addict who was arrested on June 29, 1994 for drug offenses, including distribution. When Ferry agreed to cooperate, officers directed her to call Schindler's co-conspirator Richard Garin to request a purchase for three ounces of methamphetamine. On June 30, 1994, Schindler called Ferry to arrange to meet her at a restaurant to consummate the sale. On July 1, 1994, Schindler arrived at a restaurant with Garin and a female companion of Garin's to meet Ferry as scheduled. After twenty minutes, Ferry and Schindler went to Ferry's automobile together where Ferry gave Schindler $1400 in prerecorded buy money, and Schindler gave Ferry three ounces of methamphetamine in a brown paper bag. Schindler then got out of the automobile while Ferry drove away.[1]

After the transaction was complete, officers arrested Schindler and Garin. Schindler had the $1400 in prerecorded buy money in his pocket, along with two packages of methamphetamine, containing one-half ounce and two grams, respectively. Expert testimony established that a half-ounce of methamphetamine was an amount associated with distribution, rather than personal use.

At trial, the government also offered evidence tending to show that Schindler and Garin conspired to possess and distribute

---

[1]Schindler asserts that the officers did not actually observe Schindler give Ferry the drugs, and thus the only evidence on this point is Ferry's testimony, which is not credible. However, law enforcement officers took precautions to ensure the drugs Ferry returned to them were actually given to her by Schindler. Prior to sending Ferry to meet Schindler, officers searched her person and her automobile to assure no drugs were present, and until Ferry gave officers the brown paper bag containing three ounces of methamphetamine, she was under constant police surveillance.

methamphetamine prior to the July 1, 1994 transaction.  Barbara Burckhardt, who was involved in drug sales with Garin, testified Schindler told her that Garin had asked Schindler to sell drugs for him, but also that Schindler said "he was worried about getting caught for it, and he didn't want to be any part of it."  Tr. I-137.  Burckhardt also testified that after the controlled transaction, Garin told her he knew Ferry had set him up because her request for three ounces of methamphetamine was three times her usual one-ounce purchases.  Taken as true, this testimony suggests Garin and Schindler conspired in the sale of three ounces of methamphetamine to Ferry.  In addition, Ferry testified that in 1993, after a previous supplier of methamphetamine was arrested, Garin told her to contact Schindler to obtain methamphetamine in the future.

Schindler's main contention on appeal is that Burckhardt's and Ferry's testimony was not credible and thus cannot constitute substantial evidence in support of his conviction.  We note, however, that credibility determinations are best made by the jury and the trial judge who observed the proceedings.  See United States v. Parker, 32 F.3d 395, 399 (8th Cir. 1994).  Moreover, the precautions taken by law enforcement officials, see note 1, supra, make it especially unlikely that Ferry could have fabricated the essential facts of the July 1, 1994 controlled transaction.  The objective evidence arising from the controlled transaction, i.e., the half-ounce of methamphetamine found on Schindler, is strong evidence in support of his conviction for aiding and abetting possession with intent to distribute methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).  Finally, we note the circumstances of the July 1, 1994 controlled transaction -- that Ferry first called Garin to express interest in purchasing three ounces of methamphetamine, but Schindler returned her call to arrange the details, and that Garin and Schindler arrived together at the restaurant to meet Ferry -- provide evidence from which a reasonable jury could infer Garin and Schindler were mutually

involved in a conspiracy to possess and distribute methamphetamine in violation of 21 U.S.C. § 846.

The judgment is AFFIRMED.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.