**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry W. SMITH, James M. Shepherd,**
**Ernesto M. Sanchez, and Benjamin R.**
**Shepherd III, Defendants–Appellants.**

Nos. 95–1146, 95–1854, 95–
1891 and 95–4017.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 6, 1996.

Decided April 2, 1996.

Ralph M. Friederich (argued), Office of U.S. Atty., Criminal Div., Fairview Heights, IL, for U.S.

Renee E. Schooley (argued), Office of Public Defender, East St. Louis, IL, for Larry W. Smith.

Eric W. Butts, St. Louis, MO, David M. Fahrenkamp (argued), Edwardsville, IL, for James M. Shepherd.

David M. Fahrenkamp (argued), Edwardsville, IL, for Ernesto M. Sanchez.

Christopher S. Swiecicki (argued), St. Louis, MO, for Benjamin R. Shepherd.

Before ESCHBACH, KANNE and EVANS, Circuit Judges.

ESCHBACH, Circuit Judge.

On March 24, 1994, the grand jury returned a three-count indictment naming Larry Smith, James Shepherd, Ernesto Sanchez, and Benjamin Shepherd in each count. The indictment charged the defendants with conspiracy to possess with the intent to distribute marijuana, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Following an evidentiary hearing, the district court denied the defendants' separate motions to suppress evidence. A jury returned guilty verdicts as to all four defendants on all three counts. All four defendants appeal from their convictions. Smith also challenges his sentence. For the following reasons, we affirm in part, reverse in part, and remand.

## I. Background

The four defendants were arrested in Collinsville, Illinois, on February 23, 1994. Three of the defendants, Larry Smith, Ernesto Sanchez, and James Shepherd, had travelled by caravan with several other co-defendants in two separate vehicles—a Mercury Cougar (the "Cougar"), and a Ford Aerostar van (the "Aerostar")—from Arizona to Collinsville, Illinois on their way to Ohio. The defendants stopped and spent the night at a Quality Inn in Collinsville.

At 6:00 a.m. the next morning, Sergeant Netemeyer of the Collinsville Police Department observed the two vehicles with Arizona plates parked next to each other and noted that the Cougar appeared to be riding low to the ground. Netemeyer's suspicions were also aroused because the Aerostar was an old van but had a sophisticated voice alarm system. Netemeyer looked into the Cougar and noticed an air freshener hanging from the rear view mirror. He checked the registration of the vehicles and found that the Cougar was registered to Sanchez and that the Aerostar was registered to Benjamin Shepherd. The front desk clerk at the Quality Inn indicated that Benjamin Shepherd had rented two rooms the night before. Netemeyer also learned that Benjamin Shepherd had a conviction for transporting drugs. Netemeyer contacted several other officers to begin a surveillance of the vehicles. During this period of surveillance, the officers observed a third vehicle—a Ford Econoline van (the "Econoline") with Ohio registration—the occupants of which appeared to be

acquainted with the occupants of the Cougar and the Aerostar.

The three vehicles left the Quality Inn separately and the defendants were arrested as a result of three different traffic stops executed by various members of the Collinsville, Illinois, Police Department. Sergeant Delmore followed the Cougar which contained James Shepherd, Sanchez and one other individual, for .7 miles before stopping it. Sergeant Netemeyer had told Delmore about the air freshener inside the Cougar, and the traffic violation observed by Delmore was an air freshener hanging from the rear view mirror, a violation of 625 ILCS 5/12–503(c). Sanchez, the driver and owner of the Cougar, consented to a search of the car. Sanchez informed Delmore that there were two unloaded, disassembled guns in the trunk. The stop lasted approximately thirty minutes and was videotaped. The occupants of the Cougar were arrested after Delmore learned that the police had located large amounts of marijuana in the Aerostar driven by Smith.

Smith drove the Aerostar away from the Quality Inn and another individual was a passenger. Officer Pyles stopped the Aerostar. Pyles testified that the van had a cracked windshield, a violation of 625 ILCS 5/12–503(e), and that he observed the van cross over the white fog line on the shoulder as it turned onto another road. Pyles gave Smith a verbal warning for crossing over the shoulder and for the cracked windshield. Pyles informed Smith that he was free to go but asked Smith for permission to search. Smith orally consented to the search. Pyles searched the van for ten to fifteen minutes and then used a police dog to search. The dog alerted Pyles to marijuana in the back of the van. Officer Pyles found approximately 45 packages totalling 91 pounds of marijuana in the vehicle.

Sergeant Netemeyer followed the Econoline van, which was driven by Benjamin Shepherd and occupied by two other individuals. Netemeyer stopped the Econoline because it was straddling lanes and because the driver failed to use a turn signal properly prior to making a turn. Netemeyer arrested Benjamin Shepherd after learning that he did not have a driver's license. While talking with one of the passengers, Netemeyer observed two semiautomatic weapon clips. During an inventory search of the vehicle, Netemeyer also located a .45 caliber handgun on the back bench seat of the van, within reach of a passenger.

The four defendants argue that the judge improperly denied their motions to suppress and that the district court erred in giving jury instruction No. 23. They argue that jury instruction No. 23 constructively amended the indictment for count three by making them liable for the acts of coconspirators and that jury instruction No. 23 failed to give the proper *Pinkerton* instruction. The four defendants also argue that the district court's instructions on count 3 were improper in the light of *Bailey v. United States*, — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Finally, defendant Smith argues that the district court erred in denying him a downward departure for being a minor or minimal participant. All four defendants filed timely notices of appeal and we have jurisdiction under 28 U.S.C. § 1291.

## II. The Motions to Suppress

■ We review the denial of a motion to suppress for clear error. *United States v. Tilmon*, 19 F.3d 1221, 1223 (7th Cir.1994).

## A. James Shepherd

■ James Shepherd did not file a motion to suppress evidence in the district court, and he has, therefore, waived his right to review of this issue. Fed.R.Crim.P. 12(f); *United States v. Moralez*, 964 F.2d 677, 680 (7th Cir.), *cert. denied*, 506 U.S. 903, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992). James Shepherd's failure to file a motion to suppress is probably explained by the fact that he lacks standing to contest the seizure of items from the Cougar owned and driven by Sanchez. James Shepherd was a passenger in the Cougar and he did not present any evidence that he had an expectation of privacy in the area searched or the items seized, and he cannot demonstrate standing to contest the seizure. *United States v. Torres*, 32 F.3d 225, 230 (7th Cir.1994), *cert. denied*, —

U.S. ——, 115 S.Ct. 912, 130 L.Ed.2d 794 (1995).

## B. Smith, Sanchez, and Benjamin Shepherd

■ The defendants argue that the traffic stops were a pretext to search for evidence. On appeal, they do not contend that the searches were illegal in any manner; they contend only that each stop itself was improper. This circuit employs an objective, two-part test for pretextual stops: we ask whether there was probable cause to make the particular stop and whether the stopping officer was acting with authority to make the stop. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir.1995), *petition for cert. filed*, (U.S. Oct. 23, 1995) (No. 95–6488); *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir.1989), *aff'd. on appeal after remand*, 925 F.2d 1064, 1065 (7th Cir.), *cert. denied*, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). In the instant case, the defendants do not challenge whether the stopping officers were acting with authority to make the stop and the district court found that each of the defendants' vehicles were stopped for a legitimate traffic violation. Therefore, we affirm the district court's denial of the motions to suppress.

■ The stops of the Aerostar and the Econoline are fairly straightforward. The Econoline was straddling lanes and the driver, Benjamin Shepherd, failed to signal prior to making a turn. Thus, Shepherd's driving gave Netemeyer ample cause to believe that Illinois traffic laws were being violated. The Aerostar had a cracked windshield and crossed over the white fog line on the shoulder. The Illinois law prohibits operating a vehicle when the windshield is "in such defective condition or repair as to materially impair the driver's view to the front, side, or rear." 625 ILCS 5/12–503(e). Smith argues that the crack in the windshield would not strike a prudent person as "materially impairing" a driver's view. Smith, however, fails to comprehend that the issue here is not whether he would have been convicted of a violation in a traffic court. The issue is whether there was probable cause that a traffic law had been violated. *See Willis*, 61

F.3d at 530; *United States v. Quinones–Sandoval*, 943 F.2d 771, 774 (7th Cir.1991). The district court reviewed the evidence and found that there was probable cause for each stop and that the stopping officers acted with authority to make the stops. We agree. The stops were not pretextual. *Trigg*, 878 F.2d at 1041.

■ The stop of the Cougar is a closer call. Sergeant Delmore stopped the Cougar based on the presence of an air freshener hanging from the rear view mirror, and gave the driver a warning for having a material obstruction between the driver and the windshield, a violation of 625 ILCS 5/12–503(c). In *United States v. Rivera*, 906 F.2d 319 (7th Cir.1990), we held that a stop for a violation of this same Illinois statute was not pretextual. Rivera, however, also involved a defendant who was driving erratically. In the instant case, the sole reason for the stop was the presence of an air freshener hanging from the rear view mirror. This reason is, nevertheless, sufficient because Fourth Amendment analysis is objective. *See United States v. McCarty*, 862 F.2d 143, 148 (7th Cir.1988). Sergeant Delmore had probable cause to stop the Cougar, so the stop did not violate Sanchez's Fourth Amendment Rights. Sergeant Delmore's subjective reasons for stopping the Cougar are irrelevant as long as he had probable cause for the stop. *Id.*

Sanchez disagrees, and argues that the stop was pretextual even when applying an objective test. Sanchez posits that, even if a reasonable officer *could* have made a stop in those circumstances, no reasonable officer *would* have made a stop in such circumstances. Sanchez supports his position by noting that Sergeant Delmore testified that he had on other occasions observed handicapped parking tags two to three times larger than this air freshener hanging from moving vehicle, but had never issued a ticket for such conduct. In addition, the government's expert in the area of narcotics interdiction and narcotics investigations, Special Agent Kevin Stallard of the Illinois State Police, testified that, in his opinion, the use of the hanging air freshener was not a violation of the law and that he would not use that as the justification for a traffic stop.

We are aware that the Supreme Court recently granted certiorari on a similar issue. *See Whren v. United States,* —— U.S. ——, 116 S.Ct. 690, 133 L.Ed.2d 595 (1996) (Question presented: Was pretextual traffic stop undertaken by officers who were prohibited by police department regulations from making traffic stops objectively unreasonable under Fourth Amendment when no reasonable officer in those circumstances would have made such stop (test used by Ninth, Tenth, and Eleventh Circuits), or was such stop permissible as long as it could have been made because of traffic violation (test used by D.C., Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Circuits)?); *see also, United States v. Cannon,* 29 F.3d 472, 474–76 (9th Cir.1994) (discussing the differences between the "would have" test and the "could have" test). The Supreme Court's decision would not affect the outcome of this case, in any event. First, unlike the defendants in *Whren,* the defendants in this case do not allege that the stopping officers were acting without authority to make the traffic stops. Second, the only evidence that Sanchez can point to in support of an argument that no reasonable officer *would* have made the stop was first adduced at trial, rather than in the suppression hearing. We review a district court's denial of a motion to suppress based solely on what the district court knew at the time of the ruling. *United States v. Fryer,* 974 F.2d 813, 819 (7th Cir.1992), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 641 (1993). The record contains no evidence that Sanchez (or Benjamin Shepherd or Smith) renewed at trial their motions to suppress evidence. When the defendant fails to renew at trial the motion to suppress, an appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a motion to suppress. *United States v. Longmire,* 761 F.2d 411, 420–21 (7th Cir. 1985); *United States v. Hicks,* 978 F.2d 722, 725 (D.C.Cir.1992).

### III. Count Three

All four defendants challenge their convictions on count three of the indictment. Count three charged the defendants with violating 18 U.S.C. § 924(c)(1), which requires the imposition of specified penalties if a defendant, "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." The district court instructed the jury on the statutory definition of 18 U.S.C. § 924(c) and on the essential elements of the offense. The district court also instructed the jury that:

> A firearm is used or carried during and in relation to a drug-trafficking crime if the circumstances of the case show that the firearm facilitated or had a role in the crime by providing a person with the security and confidence to undertake a transaction or series of transactions involving illegal drugs and currency.

In this case, the jury convicted the four defendants based on the presence of the two unloaded handguns found in the Cougar and the handgun and ammunition clips found in the Econoline. Under prior cases decided by this court, this jury instruction would have been appropriate. We must now analyze this jury instruction, however, in the light of the Supreme Court's recent decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

In *Bailey,* the Supreme Court held that "use" of a firearm for purposes of § 924(c) "must connote more than mere possession of a firearm by a person who commits a drug offense." *Id.* at ——, 116 S.Ct. at 506. The district court did not have the benefit of the Supreme Court's opinion in *Bailey* because the trial occurred in 1994. *Bailey* makes clear that, contrary to the jury instructions given by the district court, it is not enough that the weapon facilitates the drug offense by emboldening the defendant. "Use," the Court found, implies action and implementation which includes "brandishing, displaying, bartering, striking with, and firing or attempting to fire." *Id.* at ——, 116 S.Ct. at 508. The government appropriately concedes error on this issue and agrees that the conviction on count three must be reversed. The government urges, however, that the facts would support a conviction on count three for "carrying" a firearm during and in relation to a drug-trafficking offense. In such circumstances, the government points to *Bailey* and argues that we should reverse the

convictions on count three and remand for a new trial on that count.

We agree. In *Bailey,* the Court concluded that the evidence was insufficient to support either of the two defendants' convictions for "use" under § 924(c)(1). The Court went on to note however, that both defendants were charged under the "use" prong and the "carry" prong of § 924(c)(1). *Id.* at ——, 116 S.Ct. at 504. The Court, therefore, remanded the cases to the D.C. Circuit to consider whether the evidence was sufficient to support liability under the "carry" prong of § 924(c)(1). The Supreme Court remanded the case to the Court of Appeals to consider the statutory meaning of "carrying." Presumably, if the evidence is sufficient to establish "carrying," the D.C. Circuit will then remand the case to the district court for a new trial. On the other hand, if the evidence is insufficient to establish "carrying," the Court of Appeals will reverse the conviction, but choose not to remand for a new trial.

Like the indictment in *Bailey,* the indictment in this case charged the defendants under both the "use" prong and the "carry" prong of § 924(c) and the evidence is sufficient to support a conviction for "carrying" under § 924(c), if a jury so finds. The term "carry" is distinct from the term "use" and probably distinct from the term "possess," as evidenced by Congress' frequent use of the term "possess" in gun-crime statutes. *See id.* at ——, 116 S.Ct. at 506. "As the somewhat hackneyed judicial aphorism goes, when Congress wants to criminalize gun possession, it knows how to do so." *United States v. McFadden,* 13 F.3d 463, 467 (1st Cir.1994) (Breyer, C.J., dissenting). In this case, we need not speculate about the exact parameters of these terms. The evidence indicates that one firearm was found in the backseat of the Econoline van, within reach of the passengers. Two firearms were located in the trunk of the Cougar. A defendant may be convicted for "carrying" a firearm even if the firearm was not found on the defendant's person. *See United States v. Evans,* 888 F.2d 891 (D.C.Cir.1989), *cert. denied, Curren v. United States,* 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990). De-

fendants were transporting the firearms in the Cougar and the Econoline and defendants had access to the firearms (at least the firearm on the back seat of the Econoline) "during and in relation to" a drug trafficking crime. This evidence is sufficient to establish "carrying" (though it does not compel such a finding) because the government need not establish that the carrying was "in furtherance" of the drug-trafficking offense. See H.Rep. No. 495, 99th Cong., 2d Sess. 9 (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1335.

For two additional reasons, defendants argue that we should reverse, but not remand count 3. First, defendants claim that this court's decision in *United States v. Monroe,* 73 F.3d 129 (7th Cir.1995), dictates such a course of action. We disagree. In *Monroe* we noted that there was no evidence in the record to prove that the defendant or any of the conspirators actually "carried" a firearm at the time of defendant's drug trafficking offense, *Id.* at 132, and the facts of *Monroe* clearly distinguish it from the instant appeal. Second, citing *United States v. Pedigo,* 12 F.3d 618, 629–31 (7th Cir.1993), defendants claim that jury instruction No. 23 constituted a constructive amendment of count 3 of the indictment. In the light of our reversal of defendants' convictions on count 3, we do not address this issue. Defendants will have ample opportunity to object to any jury instructions if the government chooses to pursue a new trial on count 3.

### IV. Smith's Sentence

Smith argues that the evidence failed to show that he had any knowledge or understanding of the scope of the conspiracy beyond the minimum required for one to act as a courier. He argues that the district court, therefore, erred in denying him a downward adjustment for being a minor or minimal participant pursuant to U.S.S.G. § 3B1.2. We review the denial of a request for a downward adjustment for clear error. *United States v. Corral–Ibarra,* 25 F.3d 430, 439 (7th Cir.1994).

Smith drove a van loaded with marijuana halfway across the country. He clear-

ly does not qualify as a "minimal partici-pant." The commentary to the guidelines states that "the downward adjustment for a minimal participant will be used infrequent-ly." U.S.S.G. § 3B1.2, comment. (n. 2). It is intended to apply, for example, to "someone who played no other role in a very large drug smuggling operation than to offload part of a single marijuana shipment or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." *Id.* Smith, clearly, is not such an insignificant player.

 The reduction for a *minor* partici-pant is a closer call. A minor participant is a participant "who is less culpable than most other participants...." *Id.* at comment. (n. 3). We have held, however, that a denial of a reduction will be upheld even in the case of a less culpable person when that less culpable person played an integral part in a conspira-cy. *United States v. Osborne,* 931 F.2d 1139, 1159 (7th Cir.1991). In the instant case, Smith drove the Aerostar, which contained 91 pounds of marijuana, from Tucson, Ari-zona. He was aware of the general purpose of the conspiracy. He is not less culpable than the other members of the conspiracy and in any event, he played an integral part because he drove the van all the way from Arizona. This was also not a case in which Smith was caught with a small amount of drugs in what constituted only a tiny portion of a much larger conspiracy. The conspiracy began and ended with the 91 pounds of mari-juana transported in the van driven by Smith. The district court's denial of a reduc-tion in Smith's offense level was not clearly erroneous.

## V.

For the above reasons, we affirm the con-victions of Larry Smith, James Shepherd, Ernesto Sanchez, and Benjamin Shepherd on counts 1 and 2. We reverse the convictions of Larry Smith, James Shepherd, Ernesto Sanchez, and Benjamin Shepherd on count 3 and we remand for a new trial on count 3 and for resentencing in light of the reversal on count 3.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.