No. 95-2860

United States of America,  *
                           *
            Appellee,      *
                           *
       v.                  *
                           *
Frank Baumgardner,         *
                           *
            Appellant.     *

                                    Appeals from the United States
                                    District Court for the
                                    Southern District of Iowa.

No. 95-3866

United States of America,  *
                           *
            Appellee,      *
                           *
       v.                  *
                           *
Frank Baumgardner,         *
                           *
            Appellant.     *

                    Submitted:  March 12, 1996

                      Filed:  June 5, 1996

Before MAGILL, FLOYD R. GIBSON, and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Frank Baumgardner appeals from his convictions for making a material false statement to the Social Security Administration (SSA) in violation of 18 U.S.C. § 1001 and for fraudulently concealing his receipt of workers' compensation benefits in violation of 42 U.S.C. § 408(a)(4). He argues that the section 1001 conviction cannot stand because under the recent Supreme Court decision, United States v. Gaudin, 115 S. Ct. 2310 (1995), the materiality of his false statements is an element of the offense that must be found by the jury beyond a reasonable doubt. He also challenges the sufficiency of the evidence to support both convictions. In light of Gaudin, we vacate Baumgardner's false statement conviction and remand for a new trial. We affirm his conviction under 42 U.S.C. § 408(a)(4), however, and remand this case to the district court for resentencing on that count.

## I.  BACKGROUND

After sustaining serious injuries from a work-related fall, Baumgardner applied for disability benefits from the SSA in 1978. The SSA denied Baumgardner's application both initially and on appeal, but an Administrative Law Judge reversed the denial and awarded him benefits in August 1979. Until 1994, Baumgardner and his dependents received monthly disability payments, ranging from $600 to $1,393, totaling over $200,000.

In his benefits application, Baumgardner agreed to notify the SSA if his medical condition improved, if he returned to work, or if he applied for or received benefits under any workers' compensation law. The occurrence of any one of these events could have affected his eligibility status. The SSA informed Baumgardner many times of his duty to report changes in his work status and the possible consequences of failing to do so.

Despite these instructions, Baumgardner did not report that from September 1981 until February 1985, he received nearly $76,342

2

in workers' compensation benefits and $26,835 in medical payments for injuries that resulted from a trucking accident. Although the SSA knew that Baumgardner had worked as a truck driver for nearly five months in 1979, it was not informed that he received workers' compensation benefits or the medical payments.

In addition, Baumgardner failed to report that he began to repair, clean, and sell new and used Rainbow vacuums out of his home. Baumgardner did not report any self-employment income to the SSA until it contacted him in April 1992. Even when confronted by the SSA, Baumgardner maintained that his work with vacuums was merely a hobby, from which he did not derive any income. Specifically, in response to questions on a SSA work activity report completed by Baumgardner in 1992, he stated that there were no months from January 1979 until April 1992 in which he had made more than $75 or worked more than fifteen hours.

Baumgardner's responses on the work activity report sparked a two-year investigation of Baumgardner's self-employment, which culminated in the underlying two-count indictment. The government charged Baumgardner with making a false statement to a government agency in violation of 18 U.S.C. § 1001 for reporting that there were no months in which he earned more than $75.00 or worked more than fifteen hours. He was also charged with concealing the receipt of workers' compensation benefits with the fraudulent intent to secure payment in a greater amount than was due him in violation of 42 U.S.C. § 408(a)(4). After a jury trial, he was convicted of both offenses. He was sentenced to twenty-three months imprisonment and three years supervised release. He was also ordered to pay over $200,000 in restitution.

At the time of Baumgardner's trial, the Eighth Circuit--and every other circuit but the Ninth--considered materiality under section 1001 to be a question of law for the district court. United States v. Johnson, 937 F.2d 392, 396 (8th Cir. 1991); see

3

<u>also</u>, <u>United States v. Gaudin</u>, 28 F.3d 943, 955 (9th Cir. 1994) (en banc) (Kozinski, J., dissenting) (citing authority from each circuit), <u>aff'd</u>, 115 S. Ct. 2310 (1995). Accordingly, the district court decided that the alleged false statement was material and did not instruct the jury on this element.[1] After Baumgardner's conviction, the Supreme Court decided <u>United States v. Gaudin</u>, 115 S. Ct. 2310 (1995), in which it held that failure to submit the issue of materiality of an alleged section 1001 violation to the jury violated the defendant's Fifth Amendment right to due process of the law and his Sixth Amendment right to have a jury determine guilt of every element of the crime charged. <u>Id</u>. at 2320. In light of <u>Gaudin</u>,

---

[1]At trial, however, there seemed to be a question as to the definition of materiality and what evidence would support that element of the offense. In response to one of defense counsel's objections to the jury instructions, the court stated: "To tell you the truth, I would hate to give you a definition of materiality right now, and I don't think it is an element, so I don't know why we have it." (Trial Tr. at 590-91). The government then informed the court that Eighth Circuit law "recommends" that it make a finding of materiality on the record before the case is submitted to the jury, to which the court responded:

> The statements in the evidence alleged to be fraudulent or alleged not to have been made that should have been made I find to be material, whatever that is. No, seriously, I think there isn't really an issue here of materiality. The issues are pretty well defined by the way the case has been presented, which is well presented.

(Trial Tr. at 591). In addition, in the presentation of its case, the government argued that the amount of disability payments Baumgardner received during the relevant time period not only went to his motive or intent in making the false statement but to the issue of materiality. (Trial Tr. at 346). Essentially, the government argued that because the SSA continued to make disability payments to Baumgardner, the false statement was material. Such a position does not reflect the definition of materiality recognized by the Supreme Court. For a statement to be material under section 1001, it must have the natural tendency to influence, or capability of influencing, a governmental agency's decision or performance of an agency function. <u>Gaudin</u>, 115 S. Ct. at 2313 (quoting <u>Kungys v. United States</u>, 485 U.S. 759, 770 (1988)); <u>Johnson</u>, 937 F.2d at 396.

4

Baumgardner filed a motion for a new trial with the district court, which was denied.  This appeal follows.

## II. DISCUSSION

On appeal, Baumgardner challenges both the district court's failure to instruct the jury on the element of materiality and the sufficiency of the evidence to support either conviction.

### A.    Gaudin Error

As the Supreme Court instructed in United States v. Gaudin, the district court's decision to remove the issue of materiality from the jury violated Baumgardner's Sixth Amendment right to have a jury determine guilt beyond a reasonable doubt of every element of the crime charged.   See Gaudin, 115 S. Ct. at 2320; United States v. Raether, No. 95-3222, slip op. at 2 (8th Cir. April 22, 1996).   Because Baumgardner's counsel did not object to the court's decision at trial, however, we must review this issue under the plain error standard of Rule 52(b) of the Federal Rules of Criminal Procedure.   This court has the limited authority to correct forfeited errors when (1) there was an error at trial, (2) the error is plain, and (3) the error affected the defendant's substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Ryan, 41 F.3d 361, 366 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1793 (1995).   In addition, we should not exercise our authority under 52(b) unless the error results in a miscarriage of justice or "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."   Olano, 507 U.S. at 732 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

Because the district court's failure to submit the question of materiality to the jury deviates from the Supreme Court's decision in Gaudin, the first prong of the Olano standard is met.   We next consider whether this error is "plain."   In this case, the question turns on whether we look to the law at the time of the trial or on appeal.   At trial, the district court's decision was in accord with

our circuit's firmly established law--materiality in a section 1001 case was a matter of law decided by the court. <u>Johnson</u>, 937 F.2d at 396. On appeal, with the benefit of hindsight, the district court's decision constitutes clear error. <u>Gaudin</u>, 115 S. Ct. at 2320.

The <u>Olano</u> Court explicitly acknowledged, but left unanswered, this precise situation:

> We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified. At a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.

<u>Olano</u>, 507 U.S. at 734. Most circuits that have addressed this open question have permitted discretionary review of errors that become plain on appeal because of a change in settled law. <u>United States v. Viola</u>, 35 F.3d 37, 42 (2d Cir. 1994) (plain error determined according to the law at the time of appeal), <u>cert.</u> <u>denied</u>, 115 S. Ct. 1270 (1995); <u>United States v. Retos</u>, 25 F.3d 1220, 1230 (3d Cir. 1994) (same); <u>United States v. Jones</u>, 21 F.3d 165, 173 & n.10 (7th Cir. 1994) (same); <u>but</u> <u>see</u> <u>United States v. Calverly</u>, 37 F.3d 160, 162-63 & n. 18 (5th Cir. 1994) (en banc) (plainness viewed from perspective of law at the time of trial, but not specifically addressing open question), <u>cert.</u> <u>denied</u>, 115 S. Ct. 1266 (1995); <u>United States v. Marder</u>, 48 F.3d 564, 573 (1st Cir.), (question left unanswered), <u>cert.</u> <u>denied</u>, 115 S. Ct. 1441 (1995); <u>United States v. Washington</u>, 12 F.3d 1128, 1139 (D.C. Cir.), (creating a special, supervening-decision doctrine to provide the defendant with the benefit of a change in law), <u>cert.</u> <u>denied</u>, 115 S. Ct. 98 (1994).

With the benefit of the varied analyses provided by our sister circuits, we now hold that the plain error prong of the <u>Olano</u> standard should be determined in accordance with the law at the

7

time of appeal. This approach is consistent with the practical considerations of judicial proceedings. Given this court's holding in Johnson, an objection at trial would have been pointless. The more stringent prerequisites imposed by Rule 52(b), as compared to Rule 52(a), are designed to encourage a defendant to raise objections during the proceeding where they might be corrected, rather than strategically to withhold an objection as a basis of appeal. See Viola, 35 F.3d at 42. By contrast, to require a defendant to raise all possible objections at trial despite settled law to the contrary would encourage frivolous arguments, impeding the proceeding and wasting judicial resources. Id. The time-of-appeal approach also recognizes the principle that a new rule for the conduct of criminal prosecutions should be applied retroactively to all cases on direct appeal. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987). Accordingly, the district court's failure to submit the issue of materiality to the jury constitutes a clear error under the current law and thus meets the second prong of the Olano test.

Having determined that the district court's decision constituted plain error, we must now address whether it affected Baumgardner's substantial rights. Generally this prong of the Rule 52(b) analysis requires a showing that the error was prejudicial--that it affected the outcome of the trial. Olano, 507 U.S. at 734. The prejudice analysis under Rule 52(b) is nearly identical to that under Rule 52(a), or harmless error, with the crucial distinction that under Rule 52(b), the defendant bears the burden of persuasion.[2] Id.

---

[2]We note that the Second Circuit reverses the burden-shifting of Rule 52(b) when an intervening decision alters a settled law. United States v. Viola, 35 F.3d 37, 42 (2d. Cir. 1994), cert. denied, 115 S. Ct. 1270 (1995). It shifts the burden back to the government to demonstrate prejudice, recognizing that a defendant should not be penalized for failing to challenge entrenched precedent. Id. Our analysis today focuses on the absence of any jury instruction closely analogous to the materiality issue. Therefore, although we find the Viola analysis persuasive, we leave the issue of burden-shifting for another day.

8

Our circuit has recently held that Gaudin errors are trial errors subject to harmless error review.  Raether, No. 95-3222, slip op. at 3 (reviewing the error under 52(a)); but see United States v. Wells, 63 F.3d 745, 751 (8th Cir. 1995) (vacating, without harmless error discussion, convictions in which the element of materiality was removed from the jury), cert. granted, 64 U.S.L.W. 3703 (1996).  Applying the analysis of Raether, we conclude that the Gaudin error in this case was not harmless.  For an error to be harmless, it must be unimportant in relation to everything else the jury considered on the issue in question.  Yates v. Evatt, 500 U.S. 391, 406 (1991).  The record in this case does not reflect that the jury made an independent determination on the issue of materiality.  To be sure, "the jury did not make any findings that are so closely related to the materiality issue that they are functionally equivalent to a materiality finding."  Raether, No. 95-3222, slip op. at 4.  In fact, the government presented such minimal evidence of materiality at trial[3] that it is questionable whether the evidence even would have supported a jury finding on that issue.[4]  It is not our role to speculate as to what the jury would have decided if the district court had properly instructed them.  Sullivan v. Louisiana, 508 U.S. 275, 281 (1993).

---

[3]The only evidence at trial that supported a finding of the materiality of Baumgardner's false statement was the testimony of SSA employees that explained the significance of the question on the work activity report.  As explained at trial, $75 or fifteen hours per month is the guideline for determining whether someone has used a trial work period month.  (Trial Tr. at 78, 114).  See 42 U.S.C. §§ 422(c), 423(e)(1); 20 C.F.R. §§ 404.1592a, 404.1594 (governing trial work period assessments).  The government did not introduce evidence to explain specifically how or the extent to which an accurate answer on the work activity report would have affected Baumgardner's disability payments.

[4]The district court's finding of materiality was similarly weak.  In deciding the matter, the court indicated that it was not aware of the recognized definition of materiality or what evidence would support such a finding.  See infra note 1.

"No matter how overwhelming the evidence of materiality, the district court was not permitted to direct a finding for the Government on this element." Raether, No. 95-3222, slip op. at 2 (citing Sullivan, 508 U.S. at 277).

Although we acknowledge that an affecting-substantial-rights inquiry is governed by a harmless error analysis, see Raether, No. 95-3222, slip op. at 3, we question whether a Gaudin error could ever be considered harmless.[5] Our court, in Wells, implicitly recognized the futility of applying the harmless error inquiry to a Gaudin error when it vacated a defendant's convictions without discussion of harmless error. Wells, 63 F.3d at 751 (holding Gaudin "dictates that we vacate defendants' convictions"). Where the issue of materiality is completely removed from

---

[5]Gaudin errors are readily distinguishable from faulty jury instruction cases. In such cases, the appellate court can review the instructions as a whole to determine whether another instruction cured the faulty instruction. For example, in United States v. Williams, 935 F.2d 1531 (8th Cir. 1991), cert. denied, 502 U.S. 1101 (1992), our court held that failure to include intent to defraud as an essential element of the offense in one instruction was harmless because other instructions essentially cured the court's defect. Id. at 1535-36. The instructions, read together, adequately apprised the jury that it must find intent beyond a reasonable doubt. Id. In addition, the questions the jury asked the court during deliberation indicated that the jury understood intent to defraud was an essential element. Id. Similarly, in Redding v. Benson, 739 F.2d 1360 (8th Cir. 1984), cert. denied, 469 U.S. 1222 (1985), although the district court did not properly instruct the jury on the offense charged, our court found the error to be harmless in light of the fact that the jury specifically made the finding left out of the instructions. The property offense required a finding that the value of the stolen property was in excess of $1,000, and the jury found it to be worth $12,000. Id. at 1363. Thus, in Redding we concluded that the "jury's critical factfinding function was not thwarted." Id. at 1364.

10

the jury's deliberation[6] and no other element of the offense is so similar
to

---

[6]The court, in this case, removed any references to materiality from the instructions on section 1001 because it determined that they would confuse the jury. (Trial Tr. at 591). The only mention of materiality was in the indictment, which standing alone is
insufficient to cure the court's defect.

that of materiality that the jury would make factually equivalent findings, it is unlikely that it could ever be argued that, had it been instructed properly, the jury would have found materiality beyond a reasonable doubt. As the Supreme Court explained in Sullivan, where "there is no object, so to speak, upon which harmless-error scrutiny can operate," the inquiry is meaningless. 113 S. Ct. at 2082. Therefore, we hold that the error in this case was not harmless and that Baumgardner's substantial rights were violated.

Finally, we will exercise our authority to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (quoting Atkinson, 297 U.S. at 160). Here, where a defendant has been denied his Fifth Amendment right to due process of the law and his Sixth Amendment right to a jury determination of an important element of the crime, the integrity of the judicial proceeding is jeopardized. Gaudin, 28 F.3d at 952; Retos, 25 F.3d at 1232; Jones, 21 F.2d at 173; but see Marder, 48 F.3d at 575. Particularly in this case, where we cannot be certain that the court even knew the definition of materiality, see infra note 1, and the evidence of materiality was slim, see infra note 3, we are concerned with the effect of the district court's error on the judicial proceeding. We must therefore correct the district court's error. Accordingly, we vacate Baumgardner's section 1001 conviction and reverse the district court's denial of a new trial.

B. Sufficiency of the Evidence

Baumgardner also challenges the sufficiency of the evidence to support both offenses. Because we have vacated the section 1001 conviction, we need only address his arguments with respect to his conviction under 42 U.S.C. § 408(a)(4).

12

In reviewing the sufficiency of the evidence, we determine whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt, considering the evidence taken in a light most favorable to the verdict.  United States v. Broyles, 37 F.3d 1314, 1317 (8th Cir. 1994) (quoting United States v. Has No Horse, 11 F.3d 104, 106-07 (8th Cir. 1993)), cert. denied, 115 S. Ct. 1441 (1995).  For a conviction under 42 U.S.C. § 408(a)(4), the government must prove the following:

> (1)  the defendant had knowledge of an event affecting his right to receive or to continue to receive payments;
>
> (2)  the defendant knowingly concealed or failed to disclose this event to the Social Security Administration; and
>
> (3)  the defendant concealed or failed to disclose this event with the intent to fraudulently secure payment of Social Security disability benefits in an amount greater than was due him or when no payment to him was authorized.

United States v. Phillips, 600 F.2d 535, 536 (5th Cir. 1979) (setting out elements under prior codification of 408(a)(4)).

Baumgardner argues that the government did not prove that he failed to report his receipt of the workers' compensation benefits to the SSA.  At trial, he testified that he had reported the benefits to the SSA in a phone conversation with SSA claims representative, Carolyn Hoard, during which they discussed his employment as a truck driver.  (Trial Tr. at 357).  Hoard, however, testified that Baumgardner did not mention the workers' compensation benefits and that, if he had, she would have so indicated on her report of contact with him.  (Trial Tr. at 112).  This issue required the jury to assess the relative credibility of the two witnesses.  Because the jury had reason to discredit Baumgardner's testimony on this point, we do not upset its finding.  See United States v. Schindler, 77 F.3d 245, 247 (credibility

13

determinations best made by jury or trial judge who observed the proceedings).

Baumgardner also argues that the government did not prove that he knowingly concealed the receipt of workers' compensation benefits with the fraudulent intent to receive disability benefits to which he was not entitled. He claims that even if he did not tell SSA personnel, he thought the SSA knew of the workers' compensation benefits, thereby relieving him of his reporting obligations. Testimony at trial, including a detailing of Baumgardner's numerous bank accounts and his statements to his daughters regarding his need to keep his money spread out, provided a sufficient basis from which the jury could have reasonably inferred that Baumgardner's omission was intentional and that he knew the workers' compensation benefits could affect his disability benefits. Therefore, we conclude that the evidence on this count was sufficient to support the conviction.

III. CONCLUSION

Accordingly, we vacate Baumgardner's section 1001 conviction and remand to the district court for a new trial. Additionally, we affirm Baumgardner's conviction under 42 U.S.C. § 408(a)(4) and remand to the district court for resentencing and a new computation of restitution for that count.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

14