UNITED STATES of America,
Plaintiff–Appellee,

v.

Kendrick A. HOLMES, Defendant–Appellant.

No. 95–3653.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1996.

Decided Aug. 14, 1996.

J. Christopher Moore, Office of the United States Attorney, Benton, IL (argued), for Plaintiff–Appellee.

Eric W. Butts, St. Louis, MO (argued), for Defendant–Appellant.

Before POSNER, Chief Judge, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Following a jury trial, Kendrick Holmes was convicted of conspiracy to distribute marijuana (21 U.S.C. §§ 841 and 846), possession with intent to distribute (21 U.S.C. § 841(a)(1)), and using or carrying a firearm during, and in relation to, a drug trafficking crime (18 U.S.C. § 924(c)(1)). Mr. Holmes challenges his conviction under section 924(c)(1) based upon the Supreme Court's decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). For the reasons given in the following opinion, we reverse Mr. Holmes' conviction on that charge and remand this matter to the district court for a new trial.

I

BACKGROUND

Mr. Holmes rented a house in East St. Louis, Illinois and sold marijuana from that location. During the investigation of his activities, the police gave $100 to Sean Hampton, an informant, to buy drugs at Mr. Holmes' house where Hampton previously had purchased drugs. Hampton passed the money through the mail slot, the door opened, and he moved inside. He purchased ten "dime" bags of marijuana, which he later surrendered to the police. While inside, Hampton saw a gun clearly visible on the couch.

A month later, the police executed a search warrant at Mr. Holmes' house. In the search, the police arrested Mr. Holmes, Deveon Matlock, Delano Perry and Tommie Sain. The police also recovered five videotapes, marijuana, currency and a .9mm Stallard Arms pistol and ammunition. The pistol, along with the ammunition, was discovered on top of the trash in the kitchen.

Mr. Holmes and his three coconspirators were each charged in a three-count indictment. Tommie Sain pleaded guilty to all three counts of the indictment before trial

and testified on behalf of the government against Mr. Holmes. He said that he had been to Mr. Holmes' house at least twenty times. According to Sain's testimony, the firearm discovered during the search belonged to Sain. When the police entered Mr. Holmes' house, Sain had grabbed the gun from under the pillow on the couch on which he was sitting and, as he ran toward the kitchen, threw the gun in the trash. Sain stated that he carried the gun to protect himself and that he carried the gun on his person while he "worked the door" at Mr. Holmes' house. Moreover, he had told Mr. Holmes that he had the gun and that, on one occasion, he had hidden the gun under Mr. Holmes' mattress.

Additional evidence seized from the house revealed the presence of other weapons. The videos recovered by the police during the search showed unindicted coconspirators working the door while displaying a .44 caliber handgun and a .357 caliber handgun.

The jury was instructed that Mr. Holmes could be found guilty under section 924(c)(1) if his coconspirators used or carried firearms during the course of the conspiracy. See *United States v. Diaz,* 864 F.2d 544, 549 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). Mr. Holmes was convicted of all three counts and sentenced to a total of sixty-eight months of incarceration. His appeal challenges his conviction for the firearms offense.

## II

## DISCUSSION

### A.

■ Mr. Holmes bases his challenge to the firearms offense upon the erroneous jury instruction that was given with respect to that charge. That jury instruction read:

> The phrase "uses or carries a firearm" means having a firearm, or firearms, available to assist or aid in the commission of the crime alleged in Count 2 of the indictment.
>
> In determining whether the defendant used or carried a firearm, you may consider all of the factors received in evidence in

the case including the nature of the underlying crime of violence or drug trafficking alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

> The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time that a crime of violence or drug trafficking crime was committed.

Jury Instr. 27. At the time the instruction was given, it correctly stated the law of this circuit. See *United States v. James,* 79 F.3d 553, 553–54 (7th Cir.1996). However, after Mr. Holmes was convicted, the Supreme Court decided *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In that case, the Court held that "use" of a firearm under section 924(c) means more than mere possession; rather, the government must show that "the defendant actively employed the firearm during and in relation to the predicate crime." *Id.* at [——, 116 S.Ct. at] 509. "[T]he inert presence of a firearm, without more, is not enough to trigger § 924(c)(1).... A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." *Id.* at [——, 116 S.Ct. at] 508. There is no question that the instruction given to Mr. Holmes' jury was erroneous in light of *Bailey,* and the government concedes as much. As the instruction was given, the jury could have convicted Mr. Holmes on the theory that his coconspirators merely possessed firearms while committing drug trafficking crimes. According to *Bailey,* however, mere possession is insufficient to support a conviction for "use" of a firearm under section 924(c)(1). The Court concluded that the evidence against the defendant was insufficient to support a conviction for "use" under section 924(c) because there was no evidence that either defendant had "actively employed" a firearm. *Id.* at [——, 116 S.Ct. at] 509. The Court noted, however,

that each defendant had been charged under both the "use" and "carry" prongs of section 924(c), although the court of appeals had not considered liability under the "carry" prong. Each case was remanded "for consideration of that basis for upholding the convictions." *Id.*

### B.

Our task is to determine the appropriate course of action to take in light of this instructional error. The government submits that Mr. Holmes' conviction may be upheld, despite the erroneous instruction, because the evidence clearly establishes that firearms were "carried" during the course of the conspiracy. The government further argues that the firearms were also "used," as that term is understood in light of *Bailey*, during the conspiracy. The government submits that, because the evidence clearly shows both "use" and "carry," the jury's verdict may stand. In contrast, Mr. Holmes contends that, because of the erroneous instruction, he should be retried or resentenced.

▮▮ At trial, Mr. Holmes did not object to the instruction given by the court. We therefore must review this matter under the plain error doctrine. *See United States v. Jones*, 21 F.3d 165, 172–73 (7th Cir.1994). Federal Rule of Criminal Procedure 52(b) states: "Plain errors or defects may be noticed although they were not brought to the attention of the court." In *United States v. Olano*, 507 U.S. 725, 732–37, 113 S.Ct. 1770, 1776–80, 123 L.Ed.2d 508 (1993), the Supreme Court set forth the appropriate judicial approach for plain error situations. In order to afford the defendant relief, there must be an error that has been forfeited, not waived, by the defendant. That forfeited error must be plain. It must affect substantial rights. Even when these prerequisites have been met, relief under Rule 52(b) is permissive, not mandatory. The Supreme Court has made clear that it is appropriate to grant relief under the plain error doctrine when a miscarriage of justice would otherwise occur or when the plain forfeited error

seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Olano*, 507 U.S. at 736, 113 S.Ct. at 1778–79.

### 1.

▮▮ We begin with the first requirement. As we have already noted, there is no question that the instruction that was given was error. It is also clear that the error was forfeited and not waived. The defendant did not object to the instruction; he did not, however, relinquish a known right.

### 2.

▮▮ The error is also "plain." The instruction, although correctly reflecting the law of this circuit when it was given, does not correctly state the law as set forth by the Supreme Court of the United States in *Bailey*. In this circuit, it is established that a "'plain' error is one that is clear and uncontroverted at the time of appeal."[1] *United States v. Ross*, 77 F.3d 1525 (7th Cir.1996); *see also Jones*, 21 F.3d at 173 & n. 10. Indeed, the situation before us is one in which the policy concerns underlying the plain error doctrine are certainly not disturbed by evaluating the error at the time of the appeal. At the time of trial, the instruction given by the district court was a correct statement of the well-established law of this circuit. An objection at trial therefore would not have afforded the trial judge an opportunity to consider an ambiguous point of law and to make adjustments in the instruction. The law of the circuit dictated the content of the instruction. As the Fourth Circuit recently stressed in an analogous situation, one of the fundamental purposes of the contemporaneous objection rule is to protect judicial resources. *United States v. David*, 83 F.3d 638, 644 (4th Cir.1996). "Requiring objection at trial in the face of well-established precedent to the contrary would result in defendants raising frivolous objections simply to ensure that they would receive on appeal the benefit of any later reversals of precedent— the very kind of waste of judicial resources that the contemporaneous objection rule was

---

1. Our court follows the majority rule in this regard. *See United States v. Baumgardner*, 85 F.3d 1305, 1308 (8th Cir.1996) (collecting cases); *see also United States v. David*, 83 F.3d 638 (4th Cir.1996) (presenting an in-depth discussion of the different approaches in the various circuits).

intended to discourage." *Id.; see also United States v. Baumgardner,* 85 F.3d 1305, 1309 (8th Cir.1996). These institutional interests, moreover, do not encounter any strong countervailing concerns. Indeed, affording the defendant the benefit of the law as it exists at the time of appeal is compatible with the general approach that a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review ..., with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

### 3.

■ Next, we must determine if the error affected the substantial rights of the defendant. This inquiry requires that we determine whether the defendant has established that the error "affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. at 1778.

■ At the outset we note that *Olano* reserves the possibility that "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome." *Olano,* 507 U.S. at 735, 113 S.Ct. at 1778. We do not think that this narrow exception applies here. Although, in the context of plain error analysis, we have recognized that failure to instruct accurately with respect to an essential element of the offense is a serious matter requiring the careful scrutiny of the court, *see United States v. Kerley,* 838 F.2d 932, 939 (7th Cir.1988), it is well established that, even when there is proper objection, not all instructional error regarding the elements of the offense requires reversal of the conviction. *See Sullivan v. Louisiana,* 508 U.S. 275, 278–79, 113 S.Ct. 2078, 2080–82, 124 L.Ed.2d 182 (1993); *Yates v. Evatt,* 500 U.S. 391, 402–07, 111 S.Ct. 1884, 1892–95, 114 L.Ed.2d 432 (1991), *overruled on other grounds, Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pope v. Illinois,* 481 U.S. 497, 503 n. 7, 107 S.Ct. 1918, 1922 n. 7, 95 L.Ed.2d 439 (1987); *Rose v. Clark,* 478 U.S. 570, 579–82, 106 S.Ct. 3101, 3106–08, 92 L.Ed.2d 460 (1986); *see also United States v.*

*Perez,* 43 F.3d 1131, 1139 (7th Cir.1994) (plain error analysis); *Kerley,* 838 F.2d at 939 (plain error analysis); *United States v. Valencia,* 907 F.2d 671, 683 (7th Cir.1990) (plain error analysis).

The Supreme Court has recognized that, when there is error with respect to the elements of the offense, there is no need to retry the defendant if the facts that the jury necessarily found established his guilt beyond a reasonable doubt. *Pope,* 481 U.S. at 503, 107 S.Ct. at 1922 (remanding for harmless error review an erroneous instruction concerning standard for determining obscenity). In *Sullivan,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182, the Court noted with approval the analysis of Justice Scalia, concurring in the judgment in *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam), that further explained the reasoning for harmless-error review under such circumstances:

> When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed.

*Carella,* 491 U.S. at 271, 109 S.Ct. at 2423–24 (*quoted in Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082); *see United States v. Maloney,* 71 F.3d 645, 658 (7th Cir.1995) (noting that, although instruction permitted the jury to infer the existence of a judicial proceeding, under the facts of the case, such a finding was so closely related to the finding of obstruction of justice as to render the error harmless), *petition for cert. filed,* 65 U.S.L.W. 3085 (U.S. July 12, 1996) (No. 96–73); *United States v. Parmelee,* 42 F.3d 387, 394–95 (7th Cir.) (holding that instruction that defendant must have knowingly transported illegal alien sufficiently informed jury that the transportation must also be willful), *cert. denied,* —— U.S. ——, 116 S.Ct. 63, 133 L.Ed.2d 25 (1995).

When we consider the evidence presented in support of Mr. Holmes' section 924(c) con-

viction,[2] we must conclude that, under the instruction as it has been given, the jury could have based its verdict on a variety of factual predicates. Some of these factual predicates would support a conviction in this post-*Bailey* era; others clearly would be insufficient. The government correctly points out that there was evidence introduced at trial that would support a conviction for "carrying" a firearm under section 924(c). For example, Tommie Sain testified that he had the gun with him while he was selling marijuana through the mail slot at Mr. Holmes' house to protect himself. This behavior clearly would constitute "carrying" a firearm for purposes of section 924(c). *See Bailey,* —— U.S. at ——, 116 S.Ct. at 507 (stating that a firearm is "carried" when "an offender keeps a gun hidden in his clothing throughout a drug transaction"). Furthermore, a videotape confiscated at Mr. Holmes' residence revealed at least two unindicted persons carrying guns on their persons while they sold marijuana through the mail slot in Mr. Holmes' front door. However, other evidence established only the mere possession of firearms by members of the conspiracy. This activity did not constitute carrying the firearm. Nor did it constitute the "active employment" required for "use" by *Bailey.* For instance, Sain testified that, on one occasion, he hid his weapon underneath the mattress in Mr. Holmes' bedroom. Also, an informant testified that when he made a controlled purchase at the Holmes household, he saw a gun on Mr. Holmes' couch. This evidence, under the erroneous instruction given to the jury, would have permitted a section 924(c) conviction on the mere presence of the firearms. We therefore are confronted with a situation in which the record makes clear that there is sufficient evidence of guilt to support a verdict of guilty, but we cannot be sure whether the jury relied upon that evidence or upon evidence that, although sufficient under the law at the time of trial, is clearly inadequate after *Bailey.*

**2.** It must be remembered, of course, that Mr. Holmes is not charged with having personally used or carried a firearm during and in relation to his drug trafficking crimes. Rather, he was convicted for the section 924(c) violation of a coconspirator and the jury was instructed on the

**4.**

Under these circumstances, we believe that Mr. Holmes has carried his burden of establishing that relief is warranted in this case under the plain error rule. The error seriously affects the fairness, integrity, or public reputation of the proceedings. *Olano,* 507 U.S. at 736, 113 S.Ct. at 1778–79; *Perez,* 43 F.3d at 1140. Indeed, there exists the clear possibility that the defendant might have been found not guilty of the charge had the jury been instructed properly. *Cf. Perez,* 43 F.3d at 1140 (collecting cases).

In the terminology employed by our present Chief Judge in *Kerley,* this is not the "exceptional case" in which failure to instruct properly on an element of the offense can be considered "not so egregious" as to obviate the need for retrial. 838 F.2d at 939. Our earlier post-*Bailey* cases concluded, implicitly or explicitly, that the error we confront here seriously affects the fairness and integrity of the proceeding. Our decision today is therefore compatible with the ones that our colleagues on earlier panels of this court have reached in similar instances. In *United States v. Baker,* 78 F.3d 1241 (7th Cir.1996), we considered the appeal of a defendant who had been arrested following a traffic stop. Discovered under the driver's seat was a loaded gun, with its hammer cocked, resting on top of a bag containing crack cocaine. The jury in *Baker* was given exactly the same instruction as in Mr. Holmes' case and returned a general verdict of guilty. Noting that there was no evidence at all that the firearm was ever "used" within the meaning of the statute, we nevertheless upheld the defendant's conviction because we concluded that a properly instructed jury would have convicted the defendant. To return its original verdict of guilty, the jury necessarily accepted the testimony that the weapon was discovered under the driver's seat following the traffic stop. Because the defendant had transported the weapon and because the

*Pinkerton* theory of liability in the context of section 924(c). *See United States v. Diaz,* 864 F.2d 544, 549 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989).

weapon was within his reach, we held that the evidence established that the defendant had "carried" the firearm. Thus, the conviction against the defendant was upheld, despite the erroneous jury instruction.

*United States v. Smith,* 80 F.3d 215 (7th Cir.1996), evidences the same approach, although, by contrast to *Baker,* in that case the evidence of record indicated that a retrial was necessary because the evidence permitted, but did not compel, a jury verdict that the firearm had been carried. Following a traffic stop, two unloaded, disassembled guns were discovered in the trunk of a car. A search of a coconspirator's van, following a separate traffic stop, revealed a handgun on the back bench seat of the van, within reach of a passenger. The jury was instructed:

> A firearm is used or carried during and in relation to a drug-trafficking crime if the circumstances of the case show that the firearm facilitated or had a role in the crime by providing a person with the security and confidence to undertake a transaction or series of transactions involving illegal drugs and currency.

*Id.* at 220. We concluded that this instruction was contrary to the law established in *Bailey.* A conviction could not be sustained on the theory that the firearms had been used in the commission of a drug crime. Nevertheless, we also noted that the evidence of the firearm found on the back seat of the van within reach was sufficient to establish "carrying" of firearms, although it did not compel such a finding. As in Mr. Holmes' case, there was evidence of multiple firearms introduced at trial against the defendants, and the jury's verdict did not necessarily rest on the evidence that would sustain a conviction for "carrying" a firearm. We remanded the case for a new trial because, although the evidence could support a "carry" conviction, this determination had to be made by a jury, not an appellate court. *Id.* at 221.

Again, in *United States v. Thomas,* 86 F.3d 647 (7th Cir.1996), we reached the same re-

sult as in *Smith* and remanded the defendant's section 924(c) charge for a new trial. The evidence introduced at trial showed that one conspiracy member had clearly "used" a firearm during a shoot-out with out-of-town crack dealers during a turf war. It also revealed that a firearm had been "carried" by a conspiracy member when he brought a handgun with him to chase competing drug dealers away from the place where he was selling drugs. Although each of these instances would have supported a conviction under section 924(c), there was also evidence introduced that may have led the jury to convict the defendants under the incorrect understanding of "use"—namely, evidence that some conspiracy members owned handguns and kept them at their homes to protect their drugs and drug proceeds. Because the jury could have relied upon the evidence of mere possession of the firearms, we held that the defendants' convictions could not be upheld and remanded for a new trial on the section 924(c) count. *Id.* at 651.

Finally, we note that our approach in the post-*Bailey* context is the same as that employed by our colleagues in the Second Circuit. In *United States v. Pimentel,* 83 F.3d 55 (2d Cir.1996), the court concluded that, when the facts necessarily found by the jury were the "functional equivalent"[3] of a finding that the defendant had carried the weapon, the erroneous jury instruction with respect to the "use" of the weapon was harmless. Because the evidence established that the weapon had been in only one place and had been immediately accessible to the codefendant for whose offense the defendant was liable under the rule in *Pinkerton,* the conviction was affirmed. *Id.* at 59. On the other hand, in *United States v. Vasquez,* 85 F.3d 59 (2d Cir.1996), the Second Circuit held that the conviction could not stand because the record did not permit a determination as to whether the jury had determined, improperly, that the defendant had used the weapon or that he had carried the weapon.[4] *Id.* at 61.

---

**3.** *See United States v. Vasquez,* 85 F.3d 59, 61 (2d Cir.1996) (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 279–80, 113 S.Ct. 2078, 2081–82, 124

L.Ed.2d 182 (1993) in its description of the *Pimentel* ruling).

**4.** In *Vasquez,* the government had represented that it would not retry the defendant on the

The jury's general verdict does not necessarily establish that the jury accepted the evidence of "carrying" firearms or of active employment of firearms. Nor does it establish that the jury rejected the evidence of "mere possession." Thus, we cannot uphold Mr. Holmes' conviction. Rather, it must be reversed and remanded for a new trial on the section 924(c) charge.

### Conclusion

For the reasons given in this opinion, Mr. Holmes' conviction on the section 924(c) charge is reversed and remanded to the district court for a new trial.

REVERSED AND REMANDED.

theory that he had carried the firearm. *See* 85 F.3d at 60.