# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 02-2833 & 03-2472

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DWIGHT D. LARSON, **also known as**
DENNIS LARSON, **and** PAUL E. PALMER,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Central District of Illinois.
No. 01 CR 20041—**Michael P. McCuskey**, *Chief Judge.*

———————

ARGUED APRIL 6, 2005—DECIDED AUGUST 5, 2005

———————

Before BAUER, RIPPLE, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* A grand jury in the Central
District of Illinois indicted Dwight Larson and Paul Palmer
in May 2001 for their involvement in a tax evasion scheme.
Larson caught wind of the grand jury investigation and fled
the area prior to being indicted. He was arrested in October
2001 in Florida where he was living under an assumed
name and using a false social security number. Larson
pleaded guilty to conspiracy to defraud the United States
Department of Treasury, perjury, and willfully making and

subscribing fraudulent income tax returns. Palmer proceeded to trial *pro se* and was convicted on all counts. On appeal, Larson challenges the district court's denial of a downward adjustment for acceptance of responsibility and seeks a remand for resentencing on the basis of *United States v. Booker*, 125 S.Ct. 738 (2005). Palmer requests reversal of his conviction under the Speedy Trial Act and advances a *Booker* challenge. For the reasons stated herein, we affirm Palmer's conviction, remand his case for resentencing, and order a limited remand with respect to Larson's sentence.

## I. Background

Larson and Palmer were central figures in a conspiracy to avoid or minimize taxes owed by themselves and others. The basic tack was to avoid reporting income and paying corresponding federal income taxes by hiding assets in a series of sham trusts. The defendants' clients would open bank accounts in the names of these trusts and transfer assets to the accounts. Instead of ceding control of the trust assets, which would shift the incidence of taxation from the grantor to the trust, the clients retained full control over the trust assets. *See* 26 U.S.C. §§ 641, 671-79. But they did not report the income from the nominal trust assets and thereby evaded taxation on the income. Defendants also filed tax returns on behalf of the trusts in which the payments ultimately funneled back to their clients were deducted from the trust income. According to the government, the scheme cost the Internal Revenue Service at least $2.6 million.

Both defendants played important roles in the scheme. Palmer recruited clients, prepared trust papers, and set up the bank accounts. Larson, who operated Larson Accounting, Inc., in Charleston, Illinois, served as the accountant for the clients. He filed returns designed to con-

ceal the fiscal reality of the transactions, and also opened accounts, set up trusts, and recruited clients. In exchange for their services, defendants received hundreds of thousands of dollars in direct compensation and Palmer was "loaned" millions more, which he may or may not have repaid.

In late 1995, Larson began encouraging clients to use foreign trusts to decrease their taxes. The foreign trusts were nothing more than trust names with addresses in foreign countries. Larson knew that his clients were retaining control over the trust assets by either not sending any money to the foreign accounts or only sending money for a short period of time. Larson also knew that income taxes should have been paid on the money claimed to exist in the foreign trusts.

Larson prepared individual tax returns, corporate tax returns, and trust tax returns on behalf of clients. The individual and corporate tax returns contained false expenses and deductions and failed to report taxable income. The trust and foreign trust returns falsely represented that the taxable income was distributed to foreign entities when the income was actually still controlled by the taxpayer.

During the grand jury investigation, a subpoena was served on Larson for "[a]ny and all books and records of any type related to income and expenses for the business known as Larson Accounting, Inc. for the period 1/1/93 to [4/5/00]." Larson did not provide any pre-1996 records and later falsely testified under oath that such records had been destroyed in the ordinary course of business. In fact, there was no office policy of regular record destruction and some records from the years in question were discovered at a storage facility where Larson Accounting kept its records.

When Larson was informed in August 2000 that he was a target of the grand jury investigation, he sold his business and other property and moved to Florida, where he lived

under an assumed name and used a false social security number. Larson was arrested in Marathon, Florida, in October 2001, five months after he and Palmer were indicted. In January 2002, he pleaded guilty to three counts in the indictment: Count 1, conspiracy to defraud an agency of the United States in violation of 18 U.S.C. § 371; Count 8, willfully making and subscribing a fraudulent tax return in violation of 26 U.S.C. § 7206(1); and Count 13, knowingly making false declarations under oath in violation of 18 U.S.C. § 1623. The district judge sentenced Larson to 55 months' imprisonment and three years of supervised release, and ordered Larson to pay $701,513 in restitution. Larson served his sentence and was released by the Federal Bureau of Prisons on April 11, 2005. *See* http://www.bop.gov (inmate locator).

Facing one count of conspiracy to defraud a United States agency in violation of 18 U.S.C. § 371 and six counts of aiding and assisting the filing of false federal income tax returns in violation of 26 U.S.C. § 7206(2), Palmer opted to test the government's evidence at trial. The trial date was continued several times for reasons we will explain below. A jury ultimately found Palmer guilty on all seven counts after an eight-day trial in May 2002. The district judge imposed a sentence of 108 months' imprisonment, three years of supervised release, a fine of $150,000, and restitution in the amount of $1,369,662. This appeal ensued.

## II.  Discussion

The only substantive issue on appeal is Palmer's Speedy Trial Act challenge. The Act provides that no more than 70 days may elapse between arraignment and the commencement of trial. 18 U.S.C. § 3161(c)(1). However, certain periods of time between arraignment and trial are excluded from the Speedy Trial calculation. 18 U.S.C. § 3161(h). Importantly for our purposes, "[a]ny period of delay result-

ing in a continuance . . . [is excluded] if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). "Absent legal error, exclusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice." *United States v. Hemmings*, 258 F.3d 587, 593 (7th Cir. 2001).

We begin with a procedural timeline to frame Palmer's argument. Palmer was arraigned on September 12, 2001, and his joint trial with Larson was set to commence on November 19, 2001. As of October 4, 2001, however, Larson was still at large. The government moved to continue the trial date until December, with the suggestion of an interim status conference for an earlier trial if Larson's custody status changed. The government argued that the delay period would not count under the Act due to the absence of a codefendant and because no motion for severance had been granted. *See* 18 U.S.C. § 3161(h)(7). The district court granted the motion in part, setting a new trial date for November 26, 2001, and finding that the extra time was an excludable delay under the Act. Larson was arrested in Florida on October 18, 2001, and arraigned in the Central District of Illinois on November 19, 2001. After Larson's arrest but before his arraignment, the court granted a motion to continue filed by Palmer. Palmer, who at the time was represented by counsel, described the case as "very complicated and complex" and requested a ruling "ordering the jury trial to commence no sooner than March 1, 2002." Palmer's Appx. at 3A, 3C. The district court conducted a hearing on the matter, entertained Palmer's views on delaying the trial, and reset the trial date to February 11, 2002. The judge specifically found that the time was excludable under the Act because it was in the interests of justice to permit defense counsel more time to prepare for

trial. Palmer does not question the propriety of either of the foregoing continuances or the district court's rulings that the resulting delays were excludable under the Act.

On February 1, 2002, the district court held what was to be Palmer's final pre-trial conference. At the conference, Palmer expressed dissatisfaction with the Federal Defender's Office's handling of his case, asked to represent himself, and requested a three-month continuance to give himself time to review all of the discovery and prepare for trial. Palmer Tr. 92-96, 128-29. After a colloquy during which the district court strongly advised Palmer against representing himself, the court found that he had knowingly and willingly waived his right to counsel and continued the trial date until May 13, 2002. In granting the continuance, the district court did not specifically find that the delay was excluded under the Speedy Trial Act. On May 2, 2002, Palmer filed a motion to dismiss the indictment based on his claim that more than 70 non-excludable days had passed prior to the commencement of trial. According to Palmer, the Speedy Trial clock began on February 2, 2002, the day after the third continuance was granted, and 89 days had elapsed as of the filing date of his motion.[1] The district court denied Palmer's motion at a May 8, 2002, hearing. At that hearing, the court specifically found that the period from February 2, 2002, until May 13, 2002, did not count as time under the Act because it qualified for the interests of

---

[1] In the typical joint trial, the Speedy Trial clock begins when the last codefendant is arraigned. *United States v. Baskin-Bey*, 45 F.3d 200, 203 (7th Cir. 1995) (citing *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)); 18 U.S.C. § 3161(h)(7). In this case, that would be November 19, 2001, the date of Larson's arraignment. But no time ran from Larson's arraignment up until at least the February setting because, shortly prior to his arraignment, the district court continued the trial and excluded the accompanying delay.

justice exclusion. Palmer challenges this ruling on appeal, arguing that his conviction must be reversed because he was "sandbagged" by the district court's exclusion of that time. The government contends that the district court's findings at the February 1, 2002, hearing were sufficient to exclude the delay under the Act.

Though the district court is not required to make Speedy Trial Act findings contemporaneously with a continuance order, *United States v. Jean*, 25 F.3d 588, 595 (7th Cir. 1994), the better practice is for the court to make the required findings at least prior to a defendant's motion to dismiss the indictment for a violation of the Act. *See United States v. Janik*, 723 F.2d 537, 544-45 (7th Cir. 1983), *criticized on other grounds by Henderson*, 476 U.S. at 328-29. Nevertheless, Palmer is hardly in a position to complain about the delay because he was the one who asked for it. As related above, Palmer precipitated the delay by insisting on proceeding *pro se* on the eve of trial in a relatively complicated white collar case. Palmer himself observed in his first motion to continue that the case involved "mountains of discovery" housed in two government rooms and approximately eight computer hard drives. Palmer Appx. at 3B. With this volume of discovery in mind, the district court had little choice but to continue the trial when Palmer jettisoned his attorney at the final pre-trial conference. As we noted in a similar situation, "it is unfair of [the defendant] to ask that the trial be delayed to suit her, implicitly agree to the government's request that time be excluded because of her request, and then try to sandbag the government by insisting that the time be counted against the speedy trial clock." *United States v. Baskin-Bey*, 45 F.3d 200, 204 (7th Cir. 1995). It also warrants mentioning that the purpose of the Speedy Trial Act is to protect the defendant from excessive pre-trial delay and incarceration by the government and to protect the public's interest in the speedy resolution of justice. The Act was certainly not

meant to hamstring a defendant by pushing him into trial unprepared, which "skews the fairness of the entire system," *Barker v. Wingo*, 407 U.S. 514, 532 (1972), or to permit opportunistic behavior by defendants who request continuances for their benefit and then seek to have the accompanying delay count against the 70-day limit. In the circumstances of this case, we do not find the timing of the district court's findings to be problematic.

Moreover, Palmer cannot establish that he was prejudiced by the delay. "Prejudice is caused by delays intended to hamper defendant's ability to present his defense." *United States v. Wiehoff*, 748 F.2d 1158, 1160 n.2 (7th Cir. 1984) (citation omitted). In this case, the delay did not impede his defense, it had the opposite effect: it allowed him the time necessary to present a defense. Palmer does not provide the prejudice link in his brief, probably because it is clear that the district court had Palmer's best interests in mind when it granted his motion to continue. Given Palmer's failure to show prejudice, we have no basis to reverse the district court's exclusion of the delay associated with the third continuance.

Palmer also argues that the district court unconstitutionally enhanced his sentence on the basis of factual findings that were neither admitted nor proven to a jury beyond a reasonable doubt. Specifically, Palmer notes that his sentence was enhanced by the district court's findings with regard to tax loss, obstruction of justice, use of sophisticated means to conceal the offense, role in the offense, and receipt of a substantial portion of income from a fraudulent scheme. Because Palmer raised this issue below by challenging the district court's sentencing enhancements on the basis of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government has the burden on appeal of establishing that the error was harmless. *United States v. Olano*, 507 U.S. 725, 734-35 (1993); FED. R. CR. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial

rights must be disregarded."). The government does not attempt to make this showing; it admits that the district court's factual findings run afoul of the Sixth Amendment principles explained in *United States v. Booker*, 125 S.Ct. 738 (2005), and concedes that a full remand is the appropriate remedy. Gov't Brief at 25. We agree and accordingly vacate Palmer's sentence and remand for resentencing.[2] *United States v. Schlifer*, 403 F.3d 849, 855 (7th Cir. 2005); *United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005).

Larson appeals the district court's denial of an acceptance of responsibility adjustment and advances a *Booker* claim. Before addressing the merits of his arguments, we must determine whether Larson's recent release from prison has mooted his appeal. Though his imprisonment is over, Larson remains on supervised release, which is a form of custody. *United States v. Trotter*, 270 F.3d 1150, 1152 (7th Cir. 2001). Larson correctly points out that the case is not moot if the judge on remand would have discretion to shorten his supervised release. *Trotter*, 270 F.3d at 1152-53. Larson's three-year term is at the statutory and guidelines maximum for his offenses. 18 U.S.C. § 3583(b) (three-year maximum, no mandatory minimum); U.S.S.G. § 5D1.2(a)(2) (three-year maximum, two-year minimum). With irrelevant exceptions, the statutory scheme makes the imposition of supervised release discretionary, 18 U.S.C. § 3583(a), and the sentencing guidelines are now merely advisory. *Booker*, 125 S.Ct. 738. Because the district court has the discretion to shorten Larson's supervised release, the case is not moot so we proceed to the merits.

Larson's challenge of the district court's denial of an acceptance of responsibility adjustment is unavailing. The

---

[2] Palmer contends that the indictment must be dismissed due to these sentencing errors. This is incorrect. Errors in sentencing are remedied by resentencing rather than dismissal of indictments or reversal of convictions.

government did promise to recommend an acceptance of responsibility adjustment in the plea agreement, but the agreement qualified the promise by providing that the government could change its position if Larson subsequently demonstrated a lack of acceptance of personal responsibility. Larson Plea at 6. Based on an April 2002 meeting with a government agent where Larson attempted to shift the blame for the fraud to his clients (the meeting convinced the government not to call Larson as a witness at Palmer's trial), the district court found that Larson had not accepted responsibility. This finding was not clearly erroneous.

Larson also attacks his sentence on the basis of *Booker*, correctly noting that the district court unconstitutionally enhanced his sentence based on factual findings regarding use of sophisticated means, role in the offense, and obstruction of justice. Unlike Palmer, Larson did not bring this issue to the district court's attention by objecting at his sentencing. This forfeiture means that we may only correct the error if Larson demonstrates that it was plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. *Olano*, 507 U.S. at 732-37. In *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), we explained that the plain error analysis as it relates to *Booker* errors depends on whether the district judge would have imposed the same sentence had he known that the guidelines were merely advisory, which is a question that only the sentencing judge can answer. *Id.* at 483-84. Consequently, we will order a limited remand in accordance with the procedure outlined in *Paladino*. *Id.* at 484-85. We will vacate and remand the case for resentencing if the judge states that he would have given Larson a lighter supervised release term or otherwise imposed a different sentence had he known that the guidelines were advisory. *Id.* If, on the other hand, the judge states that he would reimpose the same sentence even under an advisory sentencing regime, we will affirm the original sentence provided that it is reasonable. *Id.*

### III. Conclusion

For the reasons stated herein, we affirm Palmer's conviction, vacate and remand his case for resentencing, and order a limited remand with respect to Larson's sentence.

A true Copy:

    Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*