In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-3537

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JEOVANTE JONES,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:09-cr-00023-bbc-1—**Barbara B. Crabb**, *Judge*.

ARGUED APRIL 23, 2010—DECIDED JULY 30, 2010

Before MANION and ROVNER, *Circuit Judges*, and
HIBBLER, *District Judge*.[*]

ROVNER, *Circuit Judge*. Jeovante Jones was arrested on
July 18, 2008, and indicted on charges of possession of
5 grams or more of a mixture containing cocaine base

---

[*] The Honorable William J. Hibbler, United States District
Court Judge for the Northern District of Illinois, sitting by
designation.

with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The amount of the drugs charged included the drugs found in the course of a search of Jones' residence following his arrest. Jones filed a motion to suppress both the evidence found at his residence and his subsequent confession as the fruit of an illegal search. After conducting an evidentiary hearing on the matter, the magistrate judge recommended denial of that motion. Jones then entered a conditional guilty plea which reserved his right to challenge the denial of the motion to suppress. The district court subsequently issued its Opinion and Order denying his motion to suppress.

The arrest was the culmination of a drug unit investigation targeting Jones, in which a confidential informant made a number of controlled purchases of crack cocaine from him. Prior to that date, the informant had completed controlled purchases of crack from Jones on three occasions, each at locations in the City of Beloit. The July 18 transaction was set up as a "buy-bust" operation, in which the police were positioned to arrest Jones during the drug sale. The transaction was to take place in the parking lot of the apartments at 1993 Colony Court in Beloit. That address corresponded with one that Jones had provided to the police as his residence in an arrest weeks earlier. He indicated at that time that he resided at 1993 Colony Court Apartment #2, and the informant had also informed the police that Jones stayed with a woman living at that residence.

Jones arrived at the parking lot at the scheduled time, exited a Dodge Durango driven by his girlfriend Ethlyn

Joseph, and proceeded toward the informant's vehicle parked a few spaces away. As Jones reached the informant's vehicle, the police pulled their undercover van behind that vehicle, at which time Jones fled on foot. All of the officers except Officer Halvorsen pursued Jones, capturing him within minutes. Halvorsen confronted Joseph who was still parked in the Dodge Durango. With his gun drawn and pointed downward in the ready position, he ordered her from the car and handcuffed her. Three children were also in the Durango. They remained in their seats throughout this time.

Joseph was then escorted to the side of the van and was placed in a seated position in the van with her feet outside the van. Within a few minutes a female officer arrived and searched Joseph for weapons. Officer Arnold then returned from the chase of Jones, and proceeded to speak with Joseph. At that time, the officers intended to pursue a search of Jones' residence. They intended to seek a warrant for the search if necessary, but first sought to obtain consent for the search from Joseph, who resided at the same apartment.

In order to build rapport with Joseph and obtain her voluntary consent, Arnold removed her handcuffs. He explained that the police intended to obtain a warrant to search the residence, that it would take some time to do so, and that the process would be faster if she chose to consent to the search. Joseph agreed to consent and signed a consent-to-search form that on its face apprised her of her right to refuse such consent. The entire conversation between Arnold and Joseph lasted no

more than 10 minutes by Joseph's own account. The police then searched the apartment and discovered the drugs which Jones now argues should have been suppressed.

Jones' arguments on appeal largely are attempts to overturn the credibility determinations made by the magistrate following the evidentiary hearing, which were adopted by the district court, finding that Joseph voluntarily consented to the search of the residence. That is an uphill battle. We will reverse a district court's finding of voluntary consent only if it is clearly erroneous. *United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1992). It is not sufficient to demonstrate that two different versions of events were presented at the hearing, because " '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " *United States v. McGraw*, 571 F.3d 624, 629 (7th Cir. 2009) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)). Therefore, we examine only whether the district court's account of facts is plausible in light of the record viewed in its entirety. *McGraw*, 571 F.3d at 629.

Jones argues that the court erred in concluding that Arnold removed Joseph's handcuffs prior to the consent. His argument hinges on the inconsistencies in the officers' testimony. According to Jones, the court found that Joseph was handcuffed behind her back, but Arnold testified that he removed cuffs from her hands that were in front of her. Jones also points out that no officer memorialized the removal of her handcuffs in the police reports.

None of those alleged inconsistencies would cause us to conclude that the district court's finding of facts was not plausible in light of the record as a whole. Inconsistencies in witness testimony such as those are weighed by a court in assessing credibility, but they do not render the credibility determination clearly erroneous. Numerous officers testified that they observed Arnold remove the handcuffs and/or observed him speaking with Joseph and noted that she was not in handcuffs at that time. There is sufficient basis to support the finding that Joseph was not in handcuffs at the time that consent to search was sought or granted.

In addition, Jones argues that Joseph was coerced into consenting based on Arnold's "empty threat" that a search warrant would eventually be obtained. Jones is correct in asserting that baseless threats to obtain a search warrant may indeed render a consent to search involuntary. *United States v. Hicks*, 539 F.3d 566, 571 (7th Cir. 2008); *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992). The appropriate focus, then, is on whether the police had a genuine intention to seek such a warrant, and more specifically, whether they had a reasonable factual basis to believe they had probable cause to obtain a warrant. *Hicks*, 539 F.3d at 572.

The officers in this case had a reasonable factual basis to believe that there was sufficient probable cause to obtain a warrant. We have recognized that a court, in determining whether to issue a search warrant, may draw reasonable inferences, based on the nature of the evidence and offense, about where evidence is likely to

be kept. *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991). Furthermore, we have repeatedly found that "participation in drug trafficking activities can create probable cause to search a participant's residence, even without direct evidence that drug-related activity is occurring there, because '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.'" *United States v. Hoffman*, 519 F.3d 672, 676 (7th Cir. 2008) (quoting *Lamon*, 930 F.2d at 1188).

Jones had engaged in three prior crack deals with the informant, and therefore was engaged in drug dealing. He had identified the Colony Court apartment as his residence to police just weeks earlier when he was arrested on an unrelated matter. The informant had also identified the apartment as the place where Jones stayed. The final transaction was to occur in the parking lot of that residence. Because a heat source is necessary to cook cocaine and form crack cocaine, there is further reason to suspect a connection between transactions involving crack cocaine and the dealer's residence. The officers testified that they had in fact obtained search warrants based on such a factual predicate. As a whole, those facts were sufficient for the officers to possess a reasonable factual basis to believe that there was sufficient probable cause to obtain a warrant.

The remainder of the attacks on voluntariness center on the court's credibility determination which found the police more credible than Joseph. In reviewing the denial of a motion to suppress, however, we review all factual determinations for clear error, with special defer-

ence to the district court's credibility determinations. *United States v. Villalpando*, 588 F.3d 1124, 1127 (7th Cir. 2009). Jones argues that the court erred in finding the police more credible, but presents nothing more than the assertions made by Joseph as to the events of the day, and occasional differences in the testimony by the officers. Jones has provided no basis for this court to conclude that the credibility determination was clear error. The decision of the district court is AFFIRMED.