In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1840

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BENJAMIN GARCIA-GARCIA,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 08 CR 30041—**Jeanne E. Scott,** *Judge*.

ARGUED JANUARY 22, 2010—DECIDED JANUARY 25, 2011

Before RIPPLE and ROVNER, *Circuit Judges*, and ST. EVE, *District Judge*.[*]

ROVNER, *Circuit Judge*. Benjamin Garcia-Garcia was convicted of illegal re-entry into the United States after having been deported, in violation of 8 U.S.C. § 1326(a), and knowingly transporting illegal aliens, in violation of

---

[*] The Honorable Amy J. St. Eve, District Judge for the Northern District of Illinois, is sitting by designation.

8 U.S.C. § 1342(a)(1). He challenges the traffic stop which led to his arrest, contending that it was not supported by probable cause and was therefore in violation of his rights under the Fourth Amendment. We affirm.

## I.

In the early evening of April 15, 2008, State Trooper Dustin Weiss was patrolling Interstate 55 near Springfield, Illinois. Trooper Weiss was parked on the median of the highway facing northbound traffic when he noticed a red Ford minivan traveling more slowly than the vehicles around it, under the posted speed limit of sixty-five miles per hour. As the van passed him, the trooper saw an air freshener hanging from the rearview mirror. The air freshener was tree-shaped, approximately five inches by three inches at its widest points, and bright pink and white in color. Photos of the van taken at the scene reveal that the air freshener was easily discernable from outside the van. A baby-sized sandal was suspended below the air freshener, and the whole assembly stretched from the mirror to just short of the dashboard.[1] Illinois law prohibits a driver from

---

[1] Trooper Weiss testified that he did not see the sandal until after he stopped the van. In the black-and-white photos of the van that appear in the record, the sandal appears to be similar in size to the air freshener but blends in with the background. Because Weiss testified that he did not see the sandal before effecting the stop, the district court did not

(continued...)

operating a vehicle "with any objects placed or suspended between the driver and the front windshield, rear window, side wings or side windows immediately adjacent to each side of the driver which materially obstructs [sic] the driver's view." 625 ILCS 5/12-503(c).[2] Believing the van to be in violation of that statute because of the air freshener, Weiss initiated a traffic stop. At a hearing to suppress the evidence that was the fruit of this stop, Weiss candidly admitted that he does not stop all vehicles with air fresheners but chose to pull over this van because of its slow speed, because the driver did not look at him as he passed, and because the driver appeared stiff, rigid and nervous.[3]

---

[1] (...continued)

consider it in determining whether probable cause existed to stop the van; we will follow suit.

[2] The title of Section 12-503 is "Windshields must be unobstructed and equipped with wipers."

[3] Driving carefully and within lawful parameters does not generate reasonable suspicion or probable cause in the ordinary case. *See United States v. Ingrao*, 897 F.2d 860, 865 (7th Cir. 1990). "The mere lawful operation of a motor vehicle should not be considered suspicious activity absent extraordinary contemporaneous events." *Id*. That Garcia-Garcia was driving within the speed limit would not, in and of itself, justify the stop. Instead we analyze the case in terms of whether the trooper reasonably believed that Garcia-Garcia violated the law that prohibited material obstructions between the driver and the windshield.

The driver of the van was Benjamin Garcia-Garcia. When Trooper Weiss asked him for identification, Garcia-Garcia produced a Mexican identification card. Garcia-Garcia spoke "broken" English, according to Weiss, and the two had difficulty communicating. There were nine passengers in the van, all Hispanic. A few of them spoke enough English for Trooper Weiss to determine that the driver did not have a valid driver's license and that all of the passengers were Mexican citizens illegally present in the United States. Trooper Weiss checked his computer for outstanding warrants and criminal history for Garcia-Garcia. He explained to Garcia-Garcia that he stopped the van because of the obstructed windshield. He issued to Garcia-Garcia a "Stop Card and Written Warning," (hereafter "Warning Ticket"), containing the handwritten notation that the offense was "12-503(c) OBSTRUCTED WINDSHIELD." The trooper also called his dispatcher and asked him to contact Immigration and Customs Enforcement ("ICE").

An ICE agent arrived and confirmed that the driver and all of the passengers were present illegally in the United States. The ten were then taken to the Springfield ICE office for questioning. After receiving *Miranda* warnings, Garcia-Garcia waived his right to an attorney and agreed to answer questions. He admitted driving the passengers from Phoenix, Arizona to Springfield, Illinois, where the van was stopped. He also told ICE officials that he knew his passengers were aliens who were present illegally in the United States. The passengers similarly waived their rights and admitted that they entered the United States without inspection.

The passengers had paid (or were going to pay) between $1500 and $2000 each to be taken to destinations inside the United States.

Garcia-Garcia was charged with being present without permission in the United States after previously having been deported, in violation of 8 U.S.C. § 1326(a), and with knowingly transporting illegal aliens within the United States by means of a motor vehicle, in violation of 8 U.S.C. § 1324(a)(1). Garcia-Garcia moved to suppress all evidence and statements obtained as a result of the traffic stop. The evidence Garcia-Garcia sought to suppress included the van, the passengers determined to be illegal aliens, cash found in Garcia-Garcia's possession, and Trooper Weiss' identification of Garcia-Garcia as an illegal alien. At a hearing before a magistrate judge, Trooper Weiss and Garcia-Garcia were the only two witnesses to testify. Garcia-Garcia argued before the magistrate and later in the district court that Trooper Weiss could not have seen the small air freshener from his vantage point given the speed at which the van was traveling. He also contended that Trooper Weiss could not reasonably have believed that the small air freshener was a "material" obstruction. The magistrate judge found Trooper Weiss to be credible and rejected Garcia-Garcia's version of events. The magistrate judge found that Trooper Weiss saw the air freshener as the van passed his squad car. The magistrate judge further found that nothing in the record indicated Trooper Weiss was mistaken about the law, and noted Illinois cases in which the court found that an air freshener could constitute a material obstruction.

The magistrate therefore recommended that the district court deny the motion to suppress. On *de novo* review, the district court also concluded that Trooper Weiss saw the air freshener and stopped the van based on his belief that the obstruction violated Illinois law. The court noted that the test for probable cause is an objective analysis conducted from the view of the reasonable officer under the circumstances at the time of the event. The court found that a reasonable officer could have concluded that the driver of the van committed a traffic violation. The court noted that the air freshener hung down in the driver's line of vision, and that this court had previously concluded that an air freshener hanging from a rearview mirror could constitute a material obstruction in violation of Illinois law. *See United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996). The court therefore found the stop was adequately supported by probable cause. Garcia-Garcia then pled guilty to both counts but retained his right to appeal the court's ruling on his suppression motion. The court sentenced him to concurrent thirty-month terms of imprisonment on each count, to be followed by three years of supervised release. Garcia-Garcia appeals.

## II.

On appeal, Garcia-Garcia abandons his claim that Trooper Weiss did not observe the air freshener. He argues only that no reasonable officer could have believed that this air freshener constituted a material obstruction, and that Trooper Weiss made a mistake of

law in believing that *any* obstruction of a windshield would violate Illinois law when only a material obstruction is prohibited. If the trooper did not have probable cause to believe that Garcia-Garcia violated the Illinois statute on material obstructions, there were no other legitimate reasons for the traffic stop, he argues, and any evidence procured from the stop should be suppressed. After oral argument in this appeal, Garcia-Garcia was released from prison and deported to Mexico. As a result, before addressing the substance of the case, we must first consider whether the appeal is moot. *United States v. Larson*, 417 F.3d 741, 747 (7th Cir. 2005). Although his term of imprisonment is finished, Garcia-Garcia remains on supervised release, which is a form of custody. *Larson*, 417 F.3d at 747. Moreover, a defendant's subsequent deportation does not terminate the period of supervised release. *United States v. Akinyemi*, 108 F.3d 777, 779 (7th Cir. 1997) (deportation does not extinguish supervised release). The appeal is therefore not moot. *Larson*, 417 F.3d at 747; *United States v. LaShay*, 417 F.3d 715, 716 n.1 (7th Cir. 2005). We proceed to the merits.

In reviewing the district court's denial of a motion to suppress, we review questions of law *de novo* and factual findings for clear error. *United States v. Groves*, 470 F.3d 311, 317-18 (7th Cir. 2006). *See also United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000) (probable cause determinations are reviewed *de novo*, deferring to any subsidiary findings of historical fact that are not clearly erroneous). Garcia-Garcia notes that Trooper Weiss did not utter the word "materially" when

he testified that he stopped the van because he observed the air freshener obstructing the driver's view in violation of 625 ILCS 5/12-503(c). From that omission and from the small size of the air freshener, Garcia-Garcia contends that we must conclude that Trooper Weiss was acting under a mistake of law, that the trooper thought *any* obstruction violated the statute when in fact only material obstructions are prohibited.

The prosecution bears the burden of proving by a preponderance of the evidence that a warrantless stop is supported by probable cause. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the stop. *Whren v. United States*, 517 U.S. 806, 819 (1996); *United States v. Taylor*, 596 F.3d 373, 376 (7th Cir.), *cert. denied*, 130 S.Ct. 3485 (2010); *Cashman*, 216 F.3d at 586. But when a police officer mistakenly believes that the law prohibits an act that is, in fact, perfectly legal, even a good faith belief that the law has been violated will not support the stop. *United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006) (a police officer's mistake of law cannot support probable cause to conduct a stop). "Probable cause only exists when an officer has a 'reasonable' belief that a law has been broken. . . . An officer cannot have a reasonable belief that a violation of the law occurred when the acts to which the officer points as supporting probable cause are not prohibited by law." *McDonald*, 453 F.3d at 961. At all times, the standard is objective. *Whren*, 517 U.S. at 813; *Scott v. United States*, 436 U.S. 128, 137 (1978) (in evaluating alleged violations of

the Fourth Amendment, a court first undertakes an objective assessment of an officer's actions in light of the facts and circumstances then known to the officer). The officer's subjective beliefs are largely irrelevant[4] to the probable cause inquiry. *Whren*, 517 U.S. at 813. These standards require that we answer two questions: first, we must determine what facts were known to Trooper Weiss at the time he stopped the vehicle. Second, we must decide whether a reasonable officer could conclude that these facts amount to a violation of the law, that is, whether a reasonable officer could conclude that the air freshener posed a material obstruction under Illinois law.

We begin by examining the trooper's testimony regarding the traffic stop. At the suppression hearing, Trooper Weiss testified that, as the van approached his squad car, he "could see an air freshener hanging from the rearview mirror of the vehicle." Tr. at 9. He decided to pull the vehicle over:

---

[4] We say "largely irrelevant" rather than simply "irrelevant" because of the Supreme Court's admonition that, "[o]n occasion, the motive with which the officer conducts an illegal search may have some relevance in determining the propriety of applying the exclusionary rule." *Scott v. United States*, 436 U.S. 128, 139 n.13 (1978). For example, "as a practical matter the judge's assessment of the motives of the officers may occasionally influence his judgment regarding the credibility of the officers' claims with respect to what information was or was not available to them at the time of the incident in question." *Id*. In this appeal, the trooper's credibility is not at issue and so his subjective intent in effecting the stop is wholly irrelevant to the probable cause analysis.

> Q. What was the reason for the traffic stop?
>
> A. For the obstructed view violation.
>
> Q. That was for the?
>
> A. The air freshener.

Tr. at 9. In testifying about issuing the Warning Ticket to Garcia-Garcia, Weiss testified:

> Q. What does—what was this citation written for?
>
> A. This was—the stop card warning was for the obstructed windshield, the reason why I stopped him.

Tr. at 13. The cross-examination focused largely on whether the trooper could have credibly seen the air freshener given his distance from traffic and the speed at which the van was traveling. The trooper confirmed that he witnessed no traffic violations other than the obstructed windshield, and conceded that he did not stop every car with an air freshener. He explained that this car drew his attention because of its low speed and the rigid appearance of the driver. On re-direct, the prosecutor again asked Weiss about air freshener:

> Q. Trooper, is it your testimony that as the vehicle approached you northbound, you saw the air freshener in the windshield?
>
> A. Correct.
>
> Q. And seeing that, you believed that a violation of the Illinois code was taking place?
>
> A. Yes, sir.

Q.  And that was the justification for the traffic stop?

A.  Correct.

Tr. at 27-28. In addition to the trooper's testimony, the Warning Ticket itself was admitted into evidence as were the air freshener and photos of the van taken at the time of stop. The photos display the size and position of the air freshener relative to the driver's seat. As we noted above, the Warning Ticket bore the trooper's handwritten notation that the offense was "12-503(c) OBSTRUCTED WINDSHIELD." Section 12-503(c) prohibits a driver from operating a vehicle with any object suspended between the driver and the front windshield which "materially obstructs the driver's view." The facts known to Trooper Weiss, then, included the presence of an air freshener of the size we described, hanging in the driver's line of vision as shown in the photographs. The district court found Trooper Weiss to be credible and credited all of his testimony. We must defer to those findings of fact unless they are clearly erroneous. *Groves*, 470 F.3d at 317-18. A factfinder's choice between two permissible views of the evidence cannot be clearly erroneous. *United States v. Jones*, 614 F.3d 423, 425-26 (7th Cir. 2010) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Because the district court's "account of facts is plausible in light of the record viewed in its entirety," we must defer to it. *Jones*, 614 F.3d at 426. If an officer knowing these facts could reasonably conclude that the obstruction violated Illinois law, that is all that is necessary to support probable cause.

In fact, this court has concluded in similar circum-
stances that an air freshener could constitute a material
obstruction in violation of Illinois law. *See United States
v. Smith*, 80 F.3d 215 (7th Cir. 1996). In *Smith*, as in the
instant case, the sole reason for stopping the vehicle
was the officer's belief that an air freshener hanging
from the rearview mirror violated the Illinois stat-
ute prohibiting material obstructions. We noted that an
officer's subjective reasons for stopping a vehicle were
irrelevant so long as the officer had probable cause for
the stop. The air freshener supplied probable cause in
that case even though a special agent of the Illinois
State Police testified that, in his opinion, the use of a
hanging air freshener did not violate the material ob-
structions statute. 80 F.3d at 219. The air freshener at
issue in *Smith* was one-third to one-half the size of a
parking tag for handicapped drivers. Under the rea-
soning of *Smith*, the government has met its burden of
demonstrating by a preponderance of the evidence that
the stop was supported by probable cause: Trooper Weiss
pulled the van over because he had a reasonable belief
that a law was being broken.

Garcia-Garcia argues that, under Illinois case law, no
officer could reasonably believe that the air freshener
constituted a material obstruction. Citing *People v. Cole*,
874 N.E.2d 81 (Ill. App. 4 Dist. 2007), Garcia-Garcia
argues that there was no violation of the law and
Trooper Weiss stopped the car under the misapprehen-
sion regarding what the law prohibited. *Cole* is easily
distinguishable. In *Cole*, a police officer stopped a car
in which he observed a short, single strand of opaque

beads, one quarter inch in diameter, hanging from the
rearview mirror of the car. The officer testified that the
statute, the same one at issue here, prohibited *any*
object hanging between the driver and the windshield.
874 N.E.2d at 83. He persisted in this belief even when
shown the language of the statute prohibiting only
material obstructions. The Illinois Appellate Court de-
termined that the officer was operating under a mistake
of law, and that a traffic stop based on a mistake of
law was unconstitutional even if the mistake is rea-
sonable and made in good faith. 874 N.E.2d at 88. The
court also found that, in reviewing an officer's rationale
for a traffic stop, a judge should look to whether
specific, articulable facts produced by the officer would
support reasonable suspicion of a traffic violation. 874
N.E.2d at 88. Thus, even if the officer was mistaken
about the law, a traffic stop would be constitutional if
the facts known to an officer raised a reasonable
suspicion that the defendant was in fact violating the
law as written. Under the Illinois court's interpretation,
then, if the obstruction was in fact material, then the
officer's mistaken belief that any obstruction would
suffice was irrelevant and the stop would be valid.
Because the obstruction in *Cole* could not reasonably be
considered material, the stop was not supported by
probable cause. The officer's sincere belief that any ob-
struction violated the law could not change this result.
Unlike the officer in *Cole*, Trooper Weiss did not testify
that he believed *any* obstruction violated the law. He
merely testified that this object violated Section 12-503(c).
And unlike the single, thin strand of beads in *Cole*, the

object in this case was much larger, three inches by five inches at it's widest points, large enough that a reasonable officer could conclude that it posed a material obstruction.

The Illinois courts have come to differing conclusions in air freshener cases, depending on whether the officer properly understood the law and depending on the size, placement and mobility of the air freshener at issue. An officer's belief that any obstruction larger than a thumbnail violated the statute was found to be a mistake of law. *People v. Mott*, 906 N.E.2d 159, 164 (Ill. App. 4 Dist. 2009). In *Mott*, the air freshener at issue was an irregular shaped cardboard leaf with a stem, three inches long including the narrow half-inch stem, and two and three-quarters inches at its widest point. The officer testified it was hanging one inch below the mirror but it was unclear whether it was in the driver's line of vision at all. Given the mistaken reading of the law, the court found that an object that size that was not shown to be in the driver's line of vision could not reasonably constitute a material obstruction. *Mott*, 906 N.E.2d at 164-65. The court noted, however, that size alone does not determine whether an object materially obstructs the driver's view, and that air fresheners, necklaces, pendants, parking passes, charms, beads, crucifixes, St. Christopher medals and sunglasses could all, in the proper circumstances, constitute material obstructions when suspended from a rearview mirror. 906 N.E.2d at 165-66.

In *People v. Johnson*, 893 N.E.2d 275, 277 (Ill. App. 4 Dist. 2008), the air freshener in dispute was a "life-size

pair of plastic cherries, red and green in color." The cherries were suspended from the rearview mirror by a rigid wire that did not move or swing. The court found that the officer had the same mistaken beliefs about materiality as the officer in *Cole*, and that no reasonable officer could conclude that the small cherries materially obstructed a driver's view, even if they were placed at eye level. 893 N.E.2d at 277-79. In contrast, another court upheld as constitutional a stop based on two "tree or leafy-shaped" air fresheners hanging from a rearview mirror. *People v. Jackson*, 780 N.E.2d 826, 827-29 (Ill. App. 2 Dist. 2002). The officer in that case testified that the two suspended objects were material obstructions in his opinion. Noting that we held in *Smith* that air fresheners could be considered material obstructions, the court found that these two objects could give rise to a reasonable suspicion of criminality, justifying the stop.

From these cases we conclude that air fresheners may (or may not) constitute material obstructions depending on their size, their position relative to the driver's line of vision, and whether they are stationary or mobile. In this case, in addition to the trooper's testimony, the government entered into evidence the air freshener itself, the Warning Ticket, and photos of the air freshener hanging in the van. The object the trooper observed was small, but given its size and position relative to the driver, a reasonable officer could conclude that it violated the Illinois statute prohibiting material obstructions. That reasonable belief is all that is needed to justify the warrantless stop. *See Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010) (the probable

cause inquiry is an objective one, depending on the facts as they would have appeared to a reasonable person in the position of the arresting officer).

Finally, we note that even a successful challenge to the stop would not result in the suppression of the most important evidence that Garcia-Garcia seeks to exclude. "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984). *See also Gutierrez-Berdin v. Holder*, 618 F.3d 647, 656 (7th Cir. 2010) (same). Garcia-Garcia, having previously been deported, and not having obtained the consent of the Attorney General to return, is a person whose presence in this country, without more, constitutes a crime. His identity may not be suppressed even if it was obtained in violation of the Fourth Amendment. Of course, we have already concluded that Trooper Weiss did not violate the Fourth Amendment when he stopped the van because he reasonably believed it was being operated in violation of Illinois traffic laws. The judgment is, therefore,

AFFIRMED.