In the

# United States Court of Appeals

### For the Seventh Circuit

_____

Nos. 19-2928 & 19-3153

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NAPOLEON JACKSON and KITTRELL FREEMAN,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cr-00804 — **Robert W. Gettleman**, *Judge.*

_____

ARGUED MAY 13, 2020 — DECIDED JUNE 17, 2020

_____

Before FLAUM, HAMILTON, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Does an air freshener hanging from
a rearview mirror obstruct the driver's clear view? A Chicago
police officer believed that, in this case, it did. That officer
pulled over Napoleon Jackson and his passenger Kittrell Free-
man for violating a provision of the Chicago municipal code
prohibiting any object obstructing the driver's clear view
through the windshield. Officers subsequently recovered
three firearms from the vehicle and Jackson and Freeman

were each charged with unlawful possession of a firearm by a felon. Jackson and Freeman moved to suppress the evidence for lack of probable cause to conduct the traffic stop based on their argument that the officer erroneously believed that there could not be *anything* hanging from the rearview mirror, regardless of whether it obstructed the driver's view. The district court denied the motion, finding that an officer could reasonably conclude that the air freshener obstructed the clear view and thus supported probable cause to conduct a traffic stop. Jackson and Freeman both pleaded guilty while preserving their rights to appeal the suppression ruling.

Though the district court couched its analysis in terms of probable cause, all that is required for a traffic stop is reasonable suspicion. Even so, because the officer had an articulable and objective basis for suspecting that the air freshener obstructed Jackson's clear view in violation of the city municipal code, the stop was lawful. The district court correctly denied the motion to suppress and we affirm the judgment.

## I. Background

On September 18, 2018, Napoleon Jackson was driving on the southside of Chicago, along with Kittrell Freeman as a passenger, when Chicago Police Officer Melissa Petrus observed an object hanging from Jackson's rearview mirror that appeared to be an air freshener. The two cars were facing each other across a multilane road and when Jackson turned left and crossed in front of Officer Petrus, who was on patrol with Officers Sodtez and De La O, she confirmed that the object was indeed a tree-shaped air freshener hanging from the rearview mirror. Officer Petrus turned and followed Jackson's car for about four blocks while she ran his license plate through LEADS, a law enforcement database. Officer Petrus then

pulled Jackson over to conduct a traffic stop because Jackson was in violation of a city ordinance regarding the obstruction of the driver's clear view. Specifically, Officer Petrus cited Jackson for violating section 9-40-250(b) of the Chicago municipal code, which prohibits driving a motor vehicle "with any object so placed in or upon the vehicle as to obstruct the driver's clear view through the windshield, except required or permitted equipment of the vehicle." MCC § 9-40-250(b).

During the traffic stop, the officers discovered a fully loaded rifle wedged between the front passenger's seat and the door. Officers also recovered two loaded handguns from underneath the driver's seat. Jackson and Freeman were both arrested and charged with unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

Both defendants moved to suppress the firearms, arguing that Officer Petrus lacked reasonable suspicion to conduct a traffic stop based solely on observing the air freshener hanging from the rearview mirror. Further, the defendants argued that Officer Petrus mistakenly understood the law to prohibit "anything" hanging from the rearview mirror and thus could not have reasonably believed Jackson committed a traffic violation.

The district court held an evidentiary hearing, at which Officer Petrus was the only witness. Officer Petrus testified that when she saw Jackson's vehicle across the street from her, she saw an "object hanging down from his rearview mirror" that "appeared to be some sort of air freshener." Jackson then turned in front of the officers' vehicle and Officer Petrus was "able to confirm that there was a [sic] air freshener hanging from his rearview mirror, and I knew that there were two occupants in the car." Officer Petrus turned and followed

Jackson, where she could see "the air freshener hanging down from his rearview mirror as well as a black box in front of the -- of the mirror in the windshield." She did not know what the black box was at the time.

Officer Petrus activated her emergency lights "in order to conduct the traffic stop because he was in violation of a city ordinance" for "obstruction of driver's view." Jackson pulled over and all three officers exited their patrol car and approached Jackson's vehicle. Officer Petrus approached the driver's side, Officer De La O approached the passenger's side, and Officer Sodtez went to the back of the vehicle. As Officer Petrus approached the driver's door, she noticed the air freshener hanging down from the rearview mirror and noticed that the black box appeared to be a GPS device. Upon approaching the driver's door, Officer Petrus told Jackson that he "can't have anything hanging from there [the rearview mirror]." She then pointed to the gear shifter and explained to Jackson that there were other places that he could hang his air freshener. According to Officer Petrus, the air freshener was "hanging by his face," not depressed against the window, and was "shaking." The tree-shaped air freshener was estimated to be approximately 4.7 inches by 2.75 inches.

The municipal code, however, does not prohibit simply "anything" hanging from the rearview mirror, only any object that obstructs the clear view of the driver. At the suppression hearing before the district court, the defendants pressed Officer Petrus on her understanding of the pertinent municipal code provision. Officer Petrus testified that at that time she believed the law to be that a driver "cannot have anything obstructing the driver's view" and that she "believed what he [Jackson] had hanging there obstructed the driver's view;

therefore, I conducted a traffic stop for said violation." She explained that if her "verbiage was off" when she first spoke to Jackson, "it was not in ill faith" but rather because they were "on a busy street" and "his demeanor was making [her] nervous," so she was "trying to calm him" and "trying to gain control of the situation." Officer Petrus also noted that she wrote Jackson a citation for the correct traffic violation.

At the end of the hearing, the district court recognized that our decision in *United States v. Garcia-Garcia*, 633 F.3d 608 (7th Cir. 2011), "governs this case" and holds that this type of air freshener is enough justification to pull the car over. In addition, the court found Officer Petrus "to be very credible." The district court, therefore, denied the defendants' motions to suppress. Jackson and Freeman both pleaded guilty pursuant to conditional plea agreements under Federal Rule of Criminal Procedure 11(a)(2), which preserved their rights to appeal the suppression ruling. The district court sentenced Jackson to twelve months and one day in prison, which was later reduced to nine months' imprisonment, and sentenced Freeman to sixty months' imprisonment. Neither Jackson nor Freeman appeal their sentences.

## II. Discussion

Jackson and Freeman press two arguments on appeal, one legal and one factual. They first contend that the traffic stop was unlawful because Officer Petrus based it on an unreasonable mistake of law. Failing that, they assert that the district court erred because it did not determine whether the air freshener in this case constituted a "material" obstruction. We employ a mixed standard of review for motions to suppress, reviewing questions of law de novo and factual findings for clear error. *United States v. Haldorson*, 941 F.3d 284, 290 (7th

Cir. 2019). The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop. *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014).

The Fourth Amendment permits officers to conduct a traffic stop "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *United States v. Rodriguez-Escalera*, 884 F.3d 661, 667–68 (7th Cir. 2018) ("To pull a car over for a brief investigatory stop, a police officer must have 'at least [an] articulable and reasonable suspicion' that the particular person stopped is breaking the law."). Though the defendants argue that Officer Petrus lacked probable cause to stop the vehicle—and the district too assessed whether probable cause existed—a routine traffic stop is "more analogous to a so-called '*Terry* stop' … than to a formal arrest." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117 (1998)). Thus, reasonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop. "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *Navarette*, 572 U.S. at 397); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989). Even the reasonable belief that a driver committed a minor traffic infraction will support a stop. *Garcia-Garcia*, 633 F.3d at 612. "This is an objective standard, based upon the facts available to the officers at the moment of

the seizure." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015).

Before turning to the reasonable suspicion analysis, we begin with the defendants' contention that Officer Petrus's mistake of law renders the stop unconstitutional, regardless of its reasonableness. They argue that she was mistaken because she incorrectly believed that it was against the law to have "anything" hanging from the rearview mirror, which is based on Officer Petrus's initial statement to Jackson as she approached his vehicle. But this does not tell the whole story. At the suppression hearing, Officer Petrus admitted that her "verbiage was off" initially because she was simply trying to calm Jackson down and gain control of the situation. She clarified, however, that at the time of the stop, she "believed [the law] to be you cannot have anything obstructing the driver's view." And, indeed, Officer Petrus wrote Jackson the correct citation and even included the handwritten notation "obstruction of driver's view" on the ticket. The district court found Officer Petrus to be "very credible," testified "honestly," and was not "lying about anything," including her understanding of the law. We must defer to the district court's credibility determinations, unless clearly erroneous. *Haldorson*, 941 F.3d at 290.

Even though there was no mistake of law here, more importantly for our purposes, it does not matter what Officer Petrus subjectively believed the language of the municipal code violation to be at the time of the stop. Because the reasonable suspicion inquiry is an objective standard, "[t]he officer's subjective motivations for stopping and detaining a suspect are not relevant to the reasonableness inquiry." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011). We

take the facts known to Officer Petrus and apply those to the law as written, not as expressed—correctly or incorrectly—by Officer Petrus to Jackson during the stop. It would be a different matter only if Officer Petrus had been subjectively mistaken about the law *and* Jackson had not in fact violated any law at all. In that case, then, we would ask whether the mistake of law was *objectively* reasonable, still without regard to "the subjective understanding of the particular officer involved." *Heien v. North Carolina*, 574 U.S. 54, 66 (2014); *see also United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) ("[A] police officer's *objectively reasonable* mistake of law can provide reasonable suspicion for a seizure.").

Turning to the task at hand, we ask ourselves two questions to determine whether the traffic stop was lawful: first, what facts were known to Officer Petrus at the time she stopped the vehicle? And second, based on those facts, would a reasonable officer conclude that Jackson had committed a violation of the law, namely, that the air freshener obstructed his clear view through the windshield?

At the suppression hearing, Officer Petrus testified that she first observed an "object hanging down from [Jackson's] rearview mirror," which she then confirmed was an air freshener after Jackson turned and crossed in front of her vehicle. Officer Petrus further testified that the air freshener was "hanging by his face" and "shaking," as opposed to stationary and depressed against the windshield. The air freshener was tree-shaped and approximately 4.7 inches by 2.75 inches at its longest and widest points. A similarly sized and shaped air freshener was admitted into evidence at the hearing, as well as video recordings from Officer Petrus's body-worn camera of the traffic stop and a copy of the traffic ticket she issued to

Jackson that day. Furthermore, Officer Petrus testified that she did not consider the GPS device on Jackson's windshield an obstruction because at the time she stopped Jackson, she could not determine whether, given its relative position, the device actually obstructed his line of sight.

We encountered nearly identical facts in *Garcia-Garcia*, where an Illinois state trooper patrolling I-55 saw an air freshener hanging from the rearview mirror of Garcia-Garcia's minivan as he drove by the trooper. 633 F.3d at 610. "The air freshener was tree-shaped, approximately five inches by three inches at its widest points, and bright pink and white in color." *Id*. The state trooper believed Garcia-Garcia to be in violation of an Illinois statute that "prohibits a driver from operating a vehicle 'with any objects placed or suspended between the driver and the front windshield, rear window, side wings or side windows immediately adjacent to each side of the driver which materially obstructs [sic] the driver's view,'" and initiated a traffic stop. *Id*. (quoting 625 ILCS 5/12–503(c)). The stop led to various charges for violating immigration laws, and Garcia-Garcia moved to suppress all evidence and statements obtained as a result of the traffic stop. *Id*. at 611.

Garcia-Garcia's argument on appeal was the same as is the defendants' here, that "no reasonable officer could have believed that this air freshener constituted a material obstruction, and that [the trooper] made a mistake of law in believing that *any* obstruction of a windshield would violate Illinois law when only a material obstruction is prohibited." *Id*. at 611–12. Based on the suppression hearing testimony, "[t]he facts known to [the trooper], then, included the presence of an air freshener of the size we described [five inches by three inches], hanging in the driver's line of vision as shown in the

photographs." *Id*. at 614. We held that these facts justified the warrantless stop because an officer could reasonably conclude that the air freshener "posed a material obstruction" and violated Illinois law. *Id*. at 614, 615–16. That brings us to one important distinction, however. The Illinois law at issue in *Garcia-Garcia* prohibits a "material[]" obstruction, whereas the Chicago municipal code at issue here prohibits the obstruction of the driver's "clear view." *Compare*, 625 ILCS 5/12-503(c), *with* MCC § 9-40-250(b). This is where the defendants' second challenge fails—there was no need for the district court to determine, or Officer Petrus to testify to, whether Jackson's air freshener constituted a material obstruction because that is not an element of the law that he was believed to have violated.

We commented in *Garcia-Garcia* that "air fresheners may (or may not) constitute material obstructions depending on their size, their position relative to the driver's line of vision, and whether they are stationary or mobile." 633 F.3d at 615. The same is true for whether an air freshener, or any object for that matter, constitutes an obstruction of the driver's clear view through the windshield. The reasonable suspicion determination is fact-intensive and fact-dependent; each case presents a different set of facts and circumstances that courts must carefully examine in light of the law alleged to have been violated. In this case, Officer Petrus articulated specific facts, described above, that could lead an officer to reasonably believe that Jackson's air freshener obstructed his clear view through his windshield in violation of section 9-40-250(b) of Chicago's municipal code. That reasonable belief is all that is necessary to justify the traffic stop.

### III. Conclusion

Though not every object hanging from a rearview mirror necessarily obstructs a driver's clear view through the windshield, an objective review of the record evidence establishes that Officer Petrus had reasonable suspicion to believe that Jackson's tree-shaped air freshener obstructed his clear view in violation of the traffic code. The stop was therefore constitutional and we AFFIRM the district court's judgment.